ALBURN J. FARGO *vs.* ALVAH MILLER & others.

Hampshire.    September 17, 1889. — November 29, 1889.

Present: MORTON, C. J., FIELD, C. ALLEN, HOLMES, & KNOWLTON, JJ.

*Will — Next of Kin — Blood Relations.*

A testatrix, whose father survived her, put her entire estate in trust to secure his support during life provided he should remain unmarried and himself contribute thereto, directing the trustee, if the income and his contribution were insufficient therefor, to use the principal for that purpose; she also gave him a small annuity; in case of his remarriage she ordered her estate at once to be distributed "as if my father were deceased"; at his death or remarriage she provided for the payment of various legacies, and for the creation of several trust funds, one of which at the beneficiary's death was to go to her next of kin, share and share alike; subject to these gifts and trusts, she gave one third of the residue of her estate to her husband's next of kin, and two thirds to her own, "the larger part to my next of kin; as from my family and kin my estate has been in this proportion enlarged." Numerous blood relations of the testatrix and of her husband survived the father, who never remarried, and, after the payment of the legacies and setting apart of the trust funds, there remained a substantial residue to be distributed. *Held*, that the next of kin,

both of the testatrix and of her husband, were to be ascertained as of the time of her father's death; and that by next of kin was meant the nearest blood relations of her husband and of herself living at that time, or the legal representatives of any since deceased.

BILL IN EQUITY, brought by one of the executors of the will of Sarah B. Wells, for instructions as to the disposition of the residue of the estate. The case was heard by *C. Allen*, J., and reserved for the consideration of the full court. The facts appear in the opinion.

*A. J. Fargo*, *pro se*, read the papers in the case.

*E. P. Kendrick*, for the testatrix's brother and sister, and her husband's nephew and nieces.

*C. H. Van Alstine* (of Wisconsin), for Nathaniel W. Miller.

*J. C. Hammond*, for the husband's grand-nephews and grand-nieces.

*P. Fuller* (of New York), for Frederic A. Miller.

FIELD, J. The will of Mrs. Wells was written by herself, and is dated June 2, 1886; she died without issue on April 4, 1887. Her father, Alvah Miller, senior, two brothers (Augustus and Alvah), one sister, Martha G. Reanier, and one nephew, Frederic A. Miller, son of a deceased brother, survived her. She was a widow, her husband having died on February 8, 1872. There is no mention of her mother, but it is evident that she had died before the will was made. The age of the testatrix does not appear from the papers, but there is no doubt that she did not contemplate the possibility of marrying again and of having children. The nearest blood relations of her husband living at the time of her death were one nephew and seven nieces, and the children of a niece who had died. The will puts all her property in trust for her father, if he should survive her, with directions to the trustees to give him the use of it, " or as much of it as he shall need for his comfortable support," during his life, " provided he remains unmarried and shall himself pay towards the support " of himself one thousand dollars annually. The will also provides that, " in case the income from my estate added to the one thousand dollars which shall be paid by my father, said Alvah, should by losses, changes, or any loss be insufficient for his comfortable maintenance, I will and direct the whole estate, both real and personal, shall be freely

but judiciously used for his ease, benefit, and comfort." The will also directs the trustees to pay to her father, "for his sole and separate use as long as he shall live, an annuity of one hundred dollars, payable quarterly."

With reference to the future marriage of her father, the provision is as follows: " Shall [should] such a thing occur as his marriage at his advanced age, which, though possible, is still very improbable, I direct my trustees at once to proceed with the distribution of my estate in the same manner as if my father were deceased."

The will further provides, that, " at the decease or marriage of my father, said Alvah, senior, I direct my said trustees to pay " to various persons named various sums of money, in all amounting to about fourteen thousand dollars, and "to set apart and create" five separate trust funds, in all amounting to ten thousand dollars. The persons to whom legacies in money are thus given include the children of the deceased niece of her husband, and her nephew, the son of her deceased brother; and the persons to whom the income of these trust funds is given for life include her brother, Alvah Miller, junior, and her sister. The income of the trust fund for her sister is to be " judiciously applied for her comfort in her invalid condition so long as she shall live, . . . and upon her decease the trusts so created shall cease, and the said fund shall be paid over and transferred to my next of kin, for their own benefit, and subject to their own control, share and share alike." The remaining trusts for persons are, in effect, that the net annual income shall in each case be paid and applied " to the use and benefit " of the beneficiary so long as he or she shall live, and upon his or her decease " the trusts so created shall cease, and the said fund shall be paid over and form part of my estate to be hereinafter disposed of."

The residuary clause was as follows: " Subject to the provisions hereinbefore made by way of legacies, and to the creation of the trusts hereinbefore specified, all of which are to be ratably diminished in case by any unforeseen occurrence my estate should be so diminished as not to amount to the aggregate hereinbefore disposed of, I give, devise, and bequeath all the rest, residue, and remainder of my entire estate, both real and personal, unto the next of kin of my dear husband, the late John

H. Wells, and to my next of kin in the proportion of two thirds of the amount to my next of kin, and one third to the next of kin of my late husband, the said John H., the larger part to my next of kin, as from my family and kin my estate has been in this proportion enlarged."

The father of the testatrix, Alvah Miller, senior, died on March 24, 1888, never having married again, leaving a will in which he gave all the residue of his estate to his two sons, Augustus Miller and Alvah Miller, junior. Augustus Miller died on December 28, 1888, leaving a son, Nathaniel W. Miller, one of the defendants. The executors of Mrs. Wells have paid all debts and legacies; have set apart the amounts directed for the trust funds, and have settled their accounts in the Probate Court, and there remains in their hands for distribution a balance of four thousand dollars. There is also valuable real estate.

The principal question is whether the next of kin of the testatrix, and of her deceased husband, who take under the residuary clause, are those persons who were living and next of kin at the time of her death, or those who were such at the time of the death of her father. If her next of kin are determined as of the time of her death, her father would be her sole next of kin, and he would have been the sole distributee and sole heir of her estate, if she had died intestate. It is manifest, we think, that the testatrix never intended that he should receive absolutely any of her property beyond that given to him for his life, and that she intended that, if he married, he should cease thereafter to receive any benefit from her estate. The legacies were to be paid, and the five trust funds were to be created and set apart, at the decease or marriage of the father. The first trust so to be created was to continue during the life of the sister of the testatrix, and upon her decease the fund was to be paid over to the next of kin of the testatrix, share and share alike. This contemplates that there might be more than one next of kin, and that they should take equal shares.

It is possible that the testatrix did not know the provisions of our statutes concerning the descent of real, or the distribution of personal property, but it cannot be presumed that she did not know who her nearest kindred were. It is also possible that she did not know the distinction between vested and contingent re-

mainders, or between rights of property and rights of possession and enjoyment, and that, having written down all the specific provisions she wished to make, she used general phrases in the residuary clause without considering what they meant, or might mean in the various contingencies which might happen. The primary rule is, that a will is to be construed according to the intention of the testator as expressed in it, if that intention can be ascertained with reasonable certainty. Whatever force may be given to artificial rules of construction, it is certainly an objection of some weight against any particular construction that it leads to a result which the testator could not have intended.

In *Abbott* v. *Bradstreet*, 3 Allen, 587, 589, it is said in the opinion, that "the rule is well settled, as a general rule of construction, that a bequest or devise to 'heirs' or 'heirs at law' of a testator, will be construed as referring to those who are such at the time of the testator's decease, unless a different intent is plainly manifested by the will," that "where such an intent is plainly manifested, it will of course prevail," and that "this rule is a consequence of the preference which the law gives to vested over contingent remainders." The rule is undoubtedly the same when the devise or bequest is to the next of kin of the testator, as when it is to the heirs of the testator. The cases on this subject are collected in the opinion in *Abbott* v. *Bradstreet*, and subsequent decisions have emphasized the rule there stated. *Minot* v. *Tappan*, 122 Mass. 535, 536. *Dove* v. *Torr*, 128 Mass. 38. *Minot* v. *Harris*, 132 Mass. 528. *Whall* v. *Converse*, 146 Mass. 345.

In *Abbott* v. *Bradstreet* it is also said, that "it has been held in some cases that, if there is a gift to a person for life, with remainder to the testator's next of kin, and the person taking the life estate is the sole next of kin at the death of the testator, the remainder will be considered as given to the persons answering the description at the termination of the estate for life," and that this class of cases, as well as another in which the first legatee is only one of the next of kin, "are generally recognized as exceptional, and the construction adopted is usually strengthened by some special circumstances indicative of intention." In *Minot* v. *Tappan*, it is said that the fact that the life tenant is one of the heirs at law of the testator at the time of his decease "does

not take the case out of the general rule." See *Bullock* v. *Downes*, 9 H. L. Cas. 1; *Mortimore* v. *Mortimore*, 4 App. Cas. 448; *Elmsley* v. *Young*, 2 Myl. & K. 82, 780.

Whether, if the life tenant were the sole next of kin or heir of the testator when the will was made, and would continue to be such if he survived the testator, and this were known to the testator, this fact alone would be sufficient to show that the testator did not intend to include him in a gift of the remainder to the heirs or next of kin of the testator, cannot be considered as free from doubt. See *Lees* v. *Massey*, 3 DeG., F. & J. 113; 2 Jarm. Wills, (Bigelow's ed.) 132, 141; *Cusack* v. *Rood*, 24 W. R. 391.

In the present case, the distribution of the whole estate was, by the terms of the will, to be postponed till the death or marriage of the father. There is no reference in the will to the statutes of distribution. Such a reference has sometimes been regarded as a circumstance indicating that the testator intended that his next of kin should take as of the time of his death, because the persons who are distributees under the statute take from that time. The legacy to the father would of course be of no effect if he died before the testatrix, but if he survived her she intended that he should not marry and retain any benefit from her will. She contemplated the possibility that the whole of her estate might be consumed in taking care of her father, and that the legacies to others might never be paid, or the special trust funds set apart. The reason which she gives for dividing the residue of her estate between the next of kin of her husband and those of herself in the proportion of two thirds and one third, is that "from my family and kin my estate has been in this proportion enlarged." This does not show that she contemplated that, if her father survived her, he, or only those claiming under him, should take the one third. We think that there are significant indications in the will that the testatrix did not intend that her father should take any part of the residue as her next of kin, and that she did intend that the residue should be distributed as of the time of his death or marriage, and that the next of kin should be ascertained as of that time, besides the fact that the use of the whole estate, and, if necessary, portions of the principal, had been given to him for his

life, or until he married; and, in our opinion, the will should receive this construction. See *Knowlton* v. *Sanderson*, 141 Mass. 323.

As the next of kin of the testatrix must be ascertained as of the death of her father, the next of kin of her husband must be ascertained as of the same time.

In determining the meaning of the words " next of kin," we see nothing in the will by which this case can be distinguished from *Swasey* v. *Jaques*, 144 Mass. 135. Those persons who were living and were the nearest blood relations of her husband and of herself at the time of the death of her father, or their legal representatives if they have since deceased, are entitled to the residue in the proportions declared in the will. The details of the decree must be settled by a single justice.

*So ordered.*