Joseph W. CHINN, Jr., William Winder Laird, Jr., and Walter J. Laird, Jr., as Successor Trustees under certain Declarations of Trust by William Winder Laird, Sr., dated September 26, 1916, Petitioners,

v.

Alletta d'A. DOWNS, Wilhelmina W. Craven, Rosa P. McDonald, William Winder Laird, Jr., David Laird Craven, Marina Craven Guequierre, Daphne Craven Reese, Phoebe Craven Strange, Sidney Craven, Alecia Guequierre, Thomas Ludwell Lee Reese, Natalie Averell duPont Reese, Lauren Strange, Nancy Hayward Burian, Nathan Hayward, Rosa Hayward Jones, Pierre Hayward, Nicholas Calder Lewis Jones, Mary Laird Silvia, James Laird, Irene Laird, the Unborn Issue of William Winder Laird, Sr., and any other Unascertained Beneficiaries under Certain Declarations of Trust by William Winder Laird, Sr., Dated September 26, 1916, Respondents.

Court of Chancery of Delaware,
New Castle County.

Submitted July 11, 1980.

Decided Oct. 1, 1980.

Henry N. Herndon, Jr., of Morris, James, Hitchens & Williams, Wilmington, for petitioners.

Charles S. Crompton, Jr., of Potter, Anderson & Corroon, Wilmington, for respondents William Winder Laird, Jr., Mary Laird Silvia, and James W. Laird.

Thomas P. Sweeney of Richards, Layton & Finger, Wilmington, for respondents Alletta d'A. Downs, Wilhelmina W. Craven and Rosa P. McDonald.

John Biggs, III of Biggs & Battaglia, Wilmington, guardian ad litem for certain minor respondents and unborn issue.

MARVEL, Chancellor:

On September 26, 1916, William Winder Laird as settlor established four substantially identical trusts for the immediate benefit of his four daughters, such trusts providing that the income derived from each was to be paid over to the designated daughter during her lifetime and that upon the death of a daughter that the remainder of such a trust was to be paid over free of trust:

"* * * unto such persons as shall be the next of kin, by consanguinity of (a deceased daughter), according to the statute of the State of Delaware."

The pending petition for instructions was filed by the incumbent trustees of the Laird sisters' trusts, one of whom is William Winder Laird, Jr., a brother of the four Laird sisters, who holds an interest as a contingent remainderman in the three [1] remaining trusts here involved, and consequently is as

---

1. One sister, Mary Laird Downs, died on December 12, 1977, without issue. The remainder of her trust was divided among her siblings.

well a named respondent. Having received contradictory opinions of counsel on the questions here presented, it was upon Mr. Laird's urging that the present petition for instructions was filed by the trustees.

Such petition seeks instructions of the Court as to (1) whether or not upon the death of a life tenant of one of the 1916 trusts here in issue and the making of a timely disclaimer by a remainderman of the trust in question, the interest so disclaimed becomes vested by operation of law in such remainderman's issue per stirpes, and (2) whether or not upon the death of a life beneficiary of one of the 1916 trusts, the children or grandchildren of a deceased sibling of a life tenant are entitled to take such a deceased sibling's remainder interest per stirpes by right of representation.

Named as defendants to the pending action are the surviving children of William Winder Laird, Sr., their issue, as well as the unborn issue of the settlor, and any other unascertained beneficiaries under a certain declaration of trust made by William Winder Laird, Sr., on September 26, 1916.

The Court has appointed two guardians ad litem to represent the interests of the minor beneficiaries of the trusts in issue as well as those of all unborn and unascertained beneficiaries of such trusts, one being Ann Laird Wick, the widow of George W. Laird, son of William Winder Laird, Jr., for her children, who at present are the only minor issue of William Winder Laird, Jr., and for all unborn issue of William Winder Laird, Jr., the other being John Biggs, III, the guardian ad litem for all other minor and unborn beneficiaries of the trusts here in issue, namely any unborn issue of the children of the settlor other than William Winder Laird, Jr.

The life tenants of the three remaining trusts have filed answers to the petition, and each has asked this Court to instruct the petitioners as follows, namely that upon the death of a life beneficiary that her trust remainder be held to descend per stirpes to her issue; or, in the absence of such issue, to her siblings or the issue of any sibling who has predeceased such life tenant.

William Winder Laird, Jr., along with his two surviving children and Ann Laird Wick, guardian ad litem, as aforesaid, have filed similar answers to the effect that the trustees be instructed that upon the filing of a timely disclaimer by or upon the death of a remainderman of any one of the 1916 trusts here in issue prior to that of a life tenant that such remainderman's interest shall become vested in such remainderman's issue per stirpes upon the death of the life tenant.

On the other hand, John Biggs, III, guardian ad litem, has taken the position that the Court should instruct the trustees to the effect that in the event that a remainderman, such as William Winder Laird, Jr., should disclaim his interest in any one of the trusts here in issue, that such remainder interest in such event would pass to his siblings and not to his issue per stirpes.

■ The Court's duty in a case such as the one at bar is to ascertain and give effect to the testator's or settlor's intent, bearing in mind his or her dominant purpose, *Bird v. Wilmington Society of the Fine Arts*, Del.Supr., 43 A.2d 476, and *Wilmington Trust Company v. Haskell*, Del.Ch., 282 A.2d 636 (1971) aff'd, Del.Supr., 304 A.2d 53 (1973).

■ Here, I am satisfied that the settlor's dispositive plan was clearly to accord equal treatment to his four daughters by assuring to each a substantially equal lifetime income and then to provide for the descent of the corpus of each such trust to those standing in the line of descent by ties of consanguinity, or, in other words, by the per stirpes rule of descent, including the right of representation. Having made provision for the distribution of substantially equal amounts of income for life to his four daughters, it is highly unlikely that the settlor intended a further distribution of his bounty other than by way of a similar equal distribution of corpus to the issue, if any, of such life tenants. Thus, I am satisfied that the settlor intended that if one or more of the settlor's daughters were to die without

surviving children but leaving a grandchild or grandchildren, that the rule of civil law was not to be applied in such a situation, such theory of descent requiring that such grandchild or grandchildren not qualify as next of kin of a deceased life tenant, being of the same degree of kinship as the decedent, the remainder interest of whom would thus descend per capita to the decedent's siblings and the grandchildren of the decedent, an intention which the settlor could not, in my opinion, have rationally had in view of what I believe to have been the intent of the settlor that the general Delaware rules of descent and distribution should be followed in administering the trusts in question. Thus, were the civil law of descent to be followed, if one of the settlor's children with issue were to predecease Alletta d'A. Downs, who has no children or grandchildren, the corpus of the latter's estate would unreasonably descend only to her surviving siblings to the exclusion of the issue of a deceased brother or sister.

Such a result would clearly contravene the clear and equal treatment to be accorded the settlor's children and their issue and the consequences of such an interpretation of the instruments here in issue would lead to absurd results. Compare *In re Smith's Estate*, Del.Ch., 145 A. 671 (1929), in which the Chancellor held that to construe the trust in issue by a strict application of the civil law method of descent and distribution would lead to:

> " * * * the absurd result ..... that more remote blood relations would take to the exclusion of children and parents. This result would be so glaringly at variance with the natural order of things as to require rejection."

In short, I am satisfied that in the case at bar it is only by the application of the per stirpes principle of descent and distribution, which is favored in Delaware, *In re Adkins Estate*, Del.Orph., 55 A.2d 145 (1947), and *Wilmington Trust Company v. Chapman*,

Del.Ch., 171 A. 222 (1934), aff'd sub nom. *Massey v. Wilmington Trust Company*, Del. Supr., 180 A.2d 927 (1934) that the unfair result mandated by the civil law of having the entire remainder of a trust here involved go to the surviving child of a deceased life tenant to the exclusion of the surviving child or children of a deceased child of a life tenant is to be avoided.

■ While the settlor used the phrase " * * * next of kin by consanguinity * * * " to identify the takers of the corpus of each of the trusts here in issue, he also made it clear that such descent was to be carried out " * * * according to the statute of the State of Delaware", and I have no doubt but that the settlor, in employing such phrase, made reference not to the definition of the words "kin" and "kindred" (but significantly not "next of kin") now found in 1 Del.C. § 302,[2] but rather had in mind the general statutory outline of principles governing the descent and distribution of decedents' estates now found in Title 12 Del.C. Chap. 5 under the heading "Decedents' Estates; Fiduciary Relations", particularly those provisions of Title 12 having to do with the descent of property to the issue of a decedent or of a deceased next of kin per stirpes, e.g. 12 Del.C. § 503(1), (3) and (4).

The pertinent testamentary language in the case of *In re Smith's Estate*, supra, reads as follows:

> "After the death of my said son Clifford, and after the death or marriage of the said Lavinia Brown, then in special trust to divide and pay over all of the rest, residue and remainder of my Estate, together with any accumulated and unexpended income therefrom, unto my five sons, namely, T. Darlington Smith, Norris W. Smith, Frank M. Smith, Howard B. Smith and Warner H. Smith, equally share and share alike; and if any of my said five sons should then be dead leaving issue, such issue to take among them the

2. "(9) 'Kin' and 'kindred,' as applied to the descent of estates signify kin or kindred by blood, and the degrees of consanguinity shall be computed by the civil law method; but collateral kindred claiming through a nearer common ancestor, shall be preferred to those claiming through a more remote common ancestor."

part or share their parent would have taken if living, but if any of my said five sons should die without leaving issue, then to pay over the share of the son so dying unto his next of kin, according to the statute of distribution of the State of Delaware."

And in analyzing the language employed by the testator, the Court said:

"Had the expression been 'next of kin' simpliciter, authority of eminent repute can be cited to the effect that not only widows, but even children of a deceased brother where a brother is living, would be excluded. For standing alone those words literally mean nearest blood relations. They are not in their natural signification synonymous with distributees under the statutes of distribution, which group generally includes not only non-relatives, such as husband and wife, but also blood relations who are not nearest or next to the deceased. Hence 'next of kin' standing alone has been held not to be understood as denoting the same persons as distributees under the intestacy statute; the words are confined to nearest blood relations. *Elmsley v. Young*, 2 Mylne & K. 780; *Withy v. Mangles*, 10 Clarke & F. 215; *Fargo v. Miller*, 150 Mass. 225, 22 N.E. 1003, 5 L.R.A. 690.

"As has often been remarked, words of accepted meaning are to be taken in their accepted sense. But inasmuch as the prime object of all construction is to ascertain the intent which words seek to convey, it follows that if it is apparent that words of settled meaning were intended by the testator to be used in other than their ordinary sense, the intent must prevail and the words interpreted harmoniously therewith. Another rule which is axiomatic is that in seeking the testamentary intent regard must be paid to all the language that assumes to express it. It will not do to reject any portion of it as meaningless if any reasonable significance is attributable thereto.

"In applying these elementary principles courts have held that while 'next of kin,' standing alone, does not mean the same as distributees under the statutes of

distribution, yet if anything appears in the will which shows that the testator meant 'next of kin' to mean distributees under the statute, the special testamentary definition of the phrase will be accepted and distribution in obedience thereto will be decreed. In the will before us there appears the expression, 'according to the statute of distribution.' By the use of this expression we are bound to assume that the testator meant something. The only thing which can be conceived of as having been intended by this modifying phrase is that 'next of kin,' which it explains, was meant by the testator to have a more enlarged significance than its literal import suggests."

In so deciding, the Chancellor cited and relied on the case of *Duffy v. Hargan*, 62 N.J.Eq. 588, 50 A. 678 (1901) aff'd. N.J.Err. & App., 52 A. 1131 (1902), in which the language directing distribution of the estate in issue was not as clear as in the case at bar, the phrase there used which impelled the New Jersey courts to direct a distribution according to the statute of descent and distribution of that state having provided for distribution to the " * * * next of kin according to the laws of New Jersey * * *", the Court ruling that upon the death of a life tenant, who was survived by two brothers and three children of a deceased sister, that it was intended by the testator that such children and not her sibling brother were to take the decedent's share. Compare *Wilmington Trust Company v. Morris*, Del.Ch., 54 A.2d 851 (1947). And despite the fact that the settlor in the case at bar sought to limit takers to persons related by consanguinity to the exclusion of surviving husbands, nonetheless the general intent to invoke the statutory provisions, which permit blood relations to take a remainder interest by representation, must be respected if the settlor's intent is to be implemented.

■ John Biggs, III, guardian ad litem, however, contends that the phrase " * * * according to the statute of the State of Delaware * * * " found in the trust instru-

ment here in issue is at the best ambiguous, it allegedly not being clear what statute the settlor was referring to. In so contending, however, the guardian ad litem, first of all, disregards the basic principle that in ascertaining the intent of a settlor or testator, the entire document in issue must be considered. He also overlooks the established policy of this State to the effect that a per stirpes distribution of property is preferred over one on a per capita basis. Thirdly, such guardian ad litem argues for the application of a result contrary to the settlor's obvious, rational intent to equalize a division of property among his daughters.

In support of his contentions the guardian ad litem cites a number of English decisions, which, when relevant, are persuasive in a case such as this. However, the most persuasive of the cited cases are in line with the holding of *In re Smith*, supra, namely that any indication that a testator or settlor intended that the corpus of a trust descend according to the accepted rules of descent and distribution per stirpes by right of representation calls for the application of such rules and not those of the civil law of descent. See *In re Gray's Settlement*, Eng. L.R., 2 Ch. 802 (1896), *Nichols v. Haviland*, I K & J 504, 69 Eng.Rep. 558 (1855), *Halton v. Foster*, Eng.L.R., 3 Ch.App. 503 (1868), *Withy v. Mangles*, Eng.H.L., 10 Clark & F 216, 8 Eng.Rep. 724 (1843) and *Stamp v. Cooke*, 1 Cox 234, 29 Eng.Rep. 1144 (1786).

■ Next, it being established by the case of *Wilmington Trust Company v. Carpenter*, Del.Ch., 315 A.2d 625 (1974), aff'd Del.Supr., 328 A.2d 141 (1974) that a valid disclaimer of an interest is to be given the same effect as if the disclaimer had died prior to the termination of the preceding estate, it follows that upon the death of a life tenant of one of the 1916 trusts here in issue that the making of a timely disclaimer by a remainderman will cause the interest in such trust of such remainderman to become thereby vested by operation of law in his or her issue per stirpes.

■ It necessarily follows that upon the death of a life tenant of one of the 1916 trusts that the issue of a deceased sibling of such life tenant will become entitled to take such deceased sibling's remainder interest per stirpes by right of representation and that in all instances of the descent and distribution of the property here in issue that the next of kin of those dying are to take per stirpes by right of representation and not per capita.

There being no material factual issues in dispute, respondents' motion for summary judgment will be granted, and, on notice, an order in conformity with the above may be submitted.