**Michelle DUTRA DE AMORIM,
Co-Defendant Below, Appellant,**

**v.**

**Hughes NORMENT, Brady O. Bryson, and Wilmington Trust Company, Trustees Under Agreement with Elizabeth Donner Norment, Plaintiffs Below, Appellees,**

**and**

**Phaedra Hanson, Stephanie Kay Watters Hanson and Edward L. Auditore, Personal Representative of the Estate of Donner Hanson, Co-Defendants Below, Appellees.**

Supreme Court of Delaware.

Submitted: Sept. 17, 1982.

Decided: April 14, 1983.

---

Roger A. Akin (argued) and H. Murray Sawyer, Jr., H. Murray Sawyer, Jr., P.A., Wilmington, for appellant.

John Biggs, III, Biggs & Battaglia, Wilmington, for appellee-cross appellant.

Robert K. Payson, (argued) and Daniel F. Lindley, Potter, Anderson & Corroon, Wilmington, for Bank of California, successor guardian appellee.

Before McNEILLY and MOORE, JJ., CHRISTIE, J. (then sitting as a Superior Court Judge by designation of the Chief Justice pursuant to Del. Const. art. IV, § 12).

MOORE, Justice:

This is an appeal by Michelle Dutra de Amorim (Michelle) and a cross-appeal by Phaedra Hanson (Phaedra) from the judgment of the Court of Chancery on a petition for instructions regarding a trust created in 1972 for Donner Hanson (Donner) by his

mother, Elizabeth Donner Norment. The trustees had requested resolution of several questions: whether Stephanie Hanson (Stephanie) and certain unnamed illegitimate children were "issue" as defined in the trust; whether Donner had effectively exercised a special testamentary power of appointment; whether specific trust conditions had been met to qualify Stephanie as an object of the power or as a taker in default of the power. The present Chancellor granted summary judgment on these issues, concluding that Donner did not validly exercise his power of appointment, and in default thereof the corpus and income were distributable to Phaedra and Stephanie as Donner's "then living issue" in accordance with the special meaning and intent of that term under the trust instrument. We agree with the Chancellor's conclusions and affirm.

## I.

We refer to the facts as found by the Court of Chancery. In 1972, Mrs. Norment established a trust for the benefit of her son, Donner, and his issue. The trust agreement gave the trustees the discretion to pay income and principal to Donner as well as to his issue. It also provided, in portions applicable here, that upon the death of Donner the trust principal and accumulated income were to be

distributed to or for the benefit of *such of my issue* then living or thereafter born and the spouses of such issue (including the beneficiary's spouse) in such proportions and subject to such trusts, powers and conditions as such beneficiary may *appoint by Will containing specific reference to this power of appointment.* . . . [Emphasis added.]

In the event that the power of appointment was not exercised, the trust agreement provided that any unappointed principal and accumulated income should be distributed to Donner's then living issue, *per stirpes.* However, Mrs. Norment limited the definition of issue as follows:

The term 'issue' used with respect to descendants of Donner Hanson shall not include any person now living, with the exception of his daughter, Phaedra Ann Hanson, unless my said son shall have *notified Trustees in writing* that such term shall include any issue of his second marriage. [Emphasis added.]

At the time of his death, at age 27, Donner had been married and divorced twice. He had a legitimate daughter, Phaedra, born during his first marriage and an illegitimate but legally acknowledged daughter, Stephanie, born prior to his second marriage to that child's mother. Donner purportedly fathered other illegitimate children, including the appellant, Michelle, but paternity was not legally acknowledged or adjudicated for those children.

In 1948, Mrs. Norment had created a trust for Donner in which he had a testamentary power of appointment. When she created the power in the 1972 trust, Donner was in the midst of his second divorce and had not yet acknowledged paternity of Stephanie. It is undisputed that Mrs. Norment intended to permit her son to decide whether Stephanie was to be included as a trust beneficiary. She specifically excluded Stephanie from that status and conditioned the child's later inclusion on an affirmative act of notice by Donner to the trustees. Donner gave no such notice during his lifetime, but denominated her as one of his "children" and his "daughter" in his will, and in that document exercised all powers of appointment in favor of Phaedra and Stephanie. He did not refer, however, to the specific power contained in the 1972 trust.

The Court of Chancery concluded that the term "issue" as used by Mrs. Norment excluded the illegitimate children of Donner Hanson. It further determined that Donner's attempted exercise of the power of appointment was defective as to form because he did not specifically refer to the 1972 trust instrument as requested. The Court declined to apply equitable relief to remedy that defect. Finally, the Court decided that Donner had met the condition

imposed in the trust to qualify Stephanie as "issue" for all trust purposes. Thus, the Chancellor found that Stephanie and Phaedra, Donner's only "issue" within the meaning of the trust, were takers in default of the power of appointment.

Michelle, an unacknowledged illegitimate child, appeals the findings of the Court of Chancery as to the intent of Donner's mother, the settlor, in her use of the term "issue". Michelle also challenges the finding that Stephanie was properly qualified as an appointee or taker in default. Phaedra appeals the refusal of the trial court to apply an equitable remedy to the defect of form in Donner's exercise of the power of appointment and also challenges the determination that Stephanie properly qualified as "issue" of Donner. Stephanie urges affirmance of the Chancellor's decision or, alternatively, that an equitable remedy should have been applied to the intentional but defective exercise of the power. We have reviewed the extensive record in this case. The Chancellor's findings are clearly supported by the record and his conclusions are the obvious product of an orderly and logical deductive process. Thus, we affirm the grant of summary judgment. *Levitt v. Bouvier,* Del.Supr., 287 A.2d 671, 673 (1972).

## II.

■ The cardinal rule of law regarding construction of trust provisions is that the settlor's intent controls the interpretation of the language. *duPont v. Equitable Security Trust Co.,* Del.Supr., 122 A.2d 429, 434, 439 (1956); *Chinn v. Downs,* Del.Ch., 421 A.2d 915, 917 (1980); *Porter v. duPont,* Del.Ch., 194 A.2d 565, 566 (1963); *Delaware Trust Company v. Delaware Trust Company,* Del.Ch., 91 A.2d 44, 46–47 (1952). *See also Fiduciary Trust Co. v. Fiduciary Trust Co.,* Del.Supr., 445 A.2d 927, 930 (1982); *Bird v. Wilmington Society of Fine Arts,* Del.Supr., 43 A.2d 476, 480 (1945). That intent is determined by considering the language of the instrument, read as an entirety, in light of the circumstances surrounding its creation. *Chinn v. Downs,* 421 A.2d at 920; Restatement of Property § 242 (1940). Only if this manner of analysis fails to disclose the settlor's intent may the courts resort to rules of construction. Restatement of Property § 243.

■ The term "issue", as used by Mrs. Norment, is susceptible of several meanings. *See Farrell v. Faries,* Del.Supr., 22 A.2d 380, 384 (1941); 95 C.J.S. *Wills* § 666 (1957). Historically, that term has been defined to include only descendants born in wedlock, although statutory changes have broadened its scope for intestacy purposes in some jurisdictions. For example, in Delaware, subsequently legitimized children and illegitimate children whose parents later marry may inherit intestate under statutory authority. 12 *Del.C.* §§ 101, 508.[1] *See also* Restatement of Property § 265, comment c. However, the majority rule

---

1. § 101. Definitions.

 For the purpose of wills, intestate succession and for all other purposes under this title, the following definitions shall apply:

 \* \* \* \* \*

 (2) "Issue" of a person means all his lineal descendants of all generations, with the relationship of parent and child at each generation being determined by the definitions of child and parent contained in this title.

 \* \* \* \* \* \*

 (4) The definitions of "child," "issue" or "parent" contained in this section shall not limit the right of a testator to provide by will for a definition different from those contained in this section.

 \* \* \* \* \* \*

 § 508. Meaning of child and related terms.

 If, for purposes of intestate succession, a relationship of parent and child must be established to determine succession by, through, or from a person:

 (1) [Adopted persons.]

 (2) In cases not covered by subdivision (1) of this section, a person born out of wedlock is a child of the mother.

 That person is also a child of the father, if:

 a. The natural parents participated in a marriage ceremony before or after the birth of the child, even though the attempted marriage is void; or

 b. The paternity is established by an adjudication before the death of the father or is established thereafter by preponderance of the evidence; ....

defines "issue" to exclude illegitimate offspring from the class. *See* G. Bogert, *Trusts and Trustees* § 182 at 298 (second rev. ed. 1979); 10 Am.Jur.2d *Bastards* § 136 (1963); 95 C.J.S. *Wills* § 666(4) (1957); *but see* Restatement of Property § 292, comment a[2] and *Will of Hoffman,* N.Y.Supr., 53 A.D.2d 55, 385 N.Y.S.2d 49 (1976).

The Chancellor examined the trust instrument and the circumstances which surrounded its formulation and determined that Mrs. Norment intended to rely on the majority interpretation of the term "issue". He drew this conclusion, in part, from the fact that at the time the trust was created Mrs. Norment was aware of two living claimants to the status of Donner's "issue": one, Phaedra, was a legitimate child for whom paternity was established by birth during wedlock; the other, Stephanie, was not born during wedlock and her paternity was subject to dispute at the time the instrument was drafted. Additionally, the Chancellor noted that Mrs. Norment carefully distinguished between these children in defining Donner's "issue" and excluded the only known illegitimate child from that category unless Donner affirmatively undertook to encompass the child within the class. These factual circumstances led the trial court to conclude that "issue" was used in the historical sense and excluded illegitimate children from the class of takers in default.

Appellant argues that Mrs. Norment did not define the term "issue" in consideration of children to be born in the future but intended only a restriction on Stephanie's status. Assuming, *arguendo,* that she limited her focus to Stephanie's illegitimacy at the time of drafting, we are still not persuaded that the Chancellor was incorrect in his construction of the term.

Under the provisions of the trust instrument Donner could appoint the trust estate to any of Mrs. Norment's issue, but the takers in default had to be Donner's own issue. Mrs. Norment specifically qualified only the latter category. In this regard, she made a clear choice regarding two classes of issue, represented by Phaedra and Stephanie: those born within wedlock and those born without. She chose to include as a taker in default only the individual representing the former class and to leave to her son the right to include by specific designation the individual representing the latter class. Such a deliberate distinction can only evidence an intent that those who take by default should have an undisputed relationship to her son. Unacknowledged illegitimates clearly do not fit that category.

Thus, we agree with the Chancellor's analysis and find, contrary to Michelle's assertions, that there is no need to consider rules of construction in defining "issue". In this case, Mrs. Norment's intent is ascertainable from the trust instrument itself and the circumstances surrounding its formulation. While well briefed, Michelle's public policy argument for including illegitimates within the term "issue" is inapposite. *See* Restatement of Property § 243 at 1216; *Riggs Nat'l Bank of Washington, D.C. v. Zimmer,* Del.Ch., 304 A.2d 69, 71 (1973).

 Further, we also agree with the Chancellor that Donner's will satisfied the trust notice requirement for Stephanie's inclusion as Donner's "issue" for taker in default status and therefore, derivatively, as Mrs. Norment's "issue" for appointment purposes. The trust provision mandated that Donner provide a written but unspecified form of notice to the trustee as to Stephanie's relationship to him in order to qualify her as his "issue". His testamentary language, reciting that Stephanie was his "daughter" and one of his "children", was sufficient to fulfill this requirement. Phaedra and Michelle argue that *inter vi-*

---

2. Restatement of Property § 292, comment a (1940), defines "issue" as:

[D]escendants of all generations who are born in wedlock, unless a contrary intent is formed from additional language or circumstances. Descendants ... born out of wedlock are similarly included, provided they are within the line of inheritance from the designated person.

*vos,* not testamentary, notice was intended by Mrs. Norment. However, in light of the lack of specificity as to the form of the notice as well as the existence of a duty incumbent on the trustees to read Donner's will to ascertain whether he had exercised the testamentary power of appointment, we find the Chancellor's conclusion that the notice provision was satisfied, not only unassailable but unavoidable, and we must affirm. *In re Delaware Racing Ass'n,* Del. Supr., 213 A.2d 203, 207 (1965).

### III.

Thus, in approving the Chancellor's conclusion, that the definition of "issue" excludes illegitimates with the exception of the specifically qualified child, Stephanie, we reach the remaining question: whether Donner's defective exercise of the power of appointment in favor of Stephanie and Phaedra should have been corrected by application of an equitable remedy. However, with our approval of the Chancellor's finding that only Stephanie and Phaedra can qualify as Donner's "issue", the criteria for taker in default status, it is clear that they alone must take the trust estate irrespective of whether the defective exercise is aided by an equitable remedy.

We, therefore, find it unnecessary to decide the question of whether the defective exercise of the power of appointment should be corrected by the aid of an equitable remedy.

Accordingly, for the foregoing reasons, the grant of summary judgment is

AFFIRMED.