IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| IMO: | ) | |
| RAYMOND L. HAMMOND | ) | |
| IRREVOCABLE TRUST AGREEMENT, | ) | C.A. No. 10463-ML |
| AND PNC BANK DELAWARE TRUST | ) | |
| COMPANY, AS TRUSTEE, DATED | ) | |
| OCTOBER 5, 2007 | ) | |

MASTER'S REPORT

Submitted:  January 15, 2016
Final Report:  January 28, 2016

W. Donald Sparks, II, Esquire, Chad M. Shandler, Esquire and Katharine C. Lester, Esquire, of RICHARDS, LAYTON & FINGER, P.A., Wilmington, Delaware; Attorneys for PNC Delaware Trust Company.

David E. Wilks, Esquire, of WILKS, LUKOFF & BRACEGIRDLE, LLC, Wilmington, Delaware; Attorney for Kyle Kozak.

Kathleen DeLacy, Esquire, of REGER RIZZO & DARNALL LLP, Wilmington, Delaware; Attorney for Lisa Hammond.


LEGROW, Master

The settlor of a qualified disposition trust reserved for himself a special testamentary power of appointment that allowed him to appoint trust assets to certain beneficiaries in his last will and testament, provided he specifically referenced the trust in the will. If the settlor died without a surviving spouse and without exercising the power of appointment, the trust assets were to pass to a residuary trust for the benefit of four individuals.

Several years after he created the trust, the settlor divorced his wife, to whom he had been married when the trust was created. During the separation and divorce, he signed a property settlement agreement in which he agreed that his wife would remain a beneficiary of the trust during her lifetime. After their divorce, the settlor executed his last will and testament, in which he named his ex-wife as the sole beneficiary of his estate. Nothing in the will, however, references either the trust or the power of appointment. The settlor's ex-wife takes the position that he intended her to remain as a beneficiary of the trust during her lifetime and that the trust should be interpreted consistent with that intent. One of the individuals designated as a beneficiary of the residuary trust contends that the settlor failed to exercise effectively the power of appointment and therefore the trust assets pass to the residuary trust. The trustee has filed a petition for instructions to resolve the interested parties' dispute. The would-be residuary

beneficiary has filed a motion for judgment on the pleadings. For the reasons that follow, I believe that motion should be granted.

## I. BACKGROUND

Raymond L. Hammond ("Raymond") married Lisa Hammond ("Lisa") in 2004.[1] They did not have any children as a result of their union, although Lisa had a son, Kyle Kozak ("Kyle"), from a previous marriage. Three years later, in October 2007, Raymond created a qualified disposition trust (the "Trust") under 12 *Del. C.* §§ 3570-3576.[2] Qualified disposition trusts are somewhat complicated, but – in layman's terms – an effective qualified disposition trust limits the remedies that a creditor otherwise may have to reach the assets held in the trust, or avoid the transfer of such assets into the trust, even if the settlor making the transfer also is a beneficiary of the trust.[3]

For purposes of the issues presented in this case, the agreement governing the Trust (the "Trust Agreement") contains several important clauses. The Trust, which is irrevocable as required by the Qualified Dispositions in Trust Act (the "Act"),[4] named Natcity Trust Company of Delaware as trustee.[5] Natcity changed

---

[1] I use individuals' first names because there are multiple people sharing the same name and because that is how the parties identified themselves and various beneficiaries in their petitions and briefs. No disrespect is intended.

[2] A copy of the Trust is attached to PNC's Petition for Instructions. Pet. for Instrs. Ex. A. The Trust was funded with money Raymond received as a result of a work-related injury.

[3] *See* 12 *Del. C.* §§ 3570(8), (10), (11); 3571, 3572

[4] Pet. for Instrs. Ex. A at Art. 11. *See* 12 *Del. C.* § 3570(11)(b).

[5] *Id.*, Ex. A at Art. 1.

its name to PNC Delaware Trust ("PNC Delaware") in 2009.[6]  By its terms, the Trust is to be governed, construed, and administered according to Delaware law.[7] Because the Trust is administered by a Delaware trustee and contains a Delaware choice of law provision, Delaware law governs the Trust.[8]

Article 3 of the Trust identifies the beneficiaries and their interests. Raymond, his spouse, and his issue were the beneficiaries of the Trust during Raymond's lifetime.[9]  To be a beneficiary, Raymond's spouse was required to be living with Raymond or "separated from Raymond for reasons other than marital discord."[10]  Upon Raymond's death, the trustee was permitted to pay his funeral expenses and estate taxes.  Any remaining principal or accrued income was to be distributed by the trustee or held in further trust, as Raymond directed pursuant to the special testamentary power of appointment (the "Power of Appointment") in the Trust Agreement.[11]  The Power of Appointment, which is at the heart of the parties' dispute, provides:

> Raymond shall have a special testamentary power to appoint the remaining principal and any accrued or undistributed [i]ncome outright to, or in further trust for, anyone (including, without limitation, [c]harity), other than Raymond, Raymond's estate, or the

---

[6] Pet. for Instrs. ¶ 2.
[7] *Id*. Ex. A at Art. 12.
[8] 12 *Del. C.* § 3332.  That is not to say that a court in another jurisdiction could not exercise jurisdiction over the trust.  That issue need not be resolved at this point and nothing in this report should be construed as expressing an opinion on that issue.
[9] Pet. for Instrs. Ex. A at Art. 3(A).
[10] *Id*.
[11] *Id*. at Art. 3(B).

creditors of either, *as Raymond shall direct by specific reference to this trust in* Raymond's *Will*, provided, however, that *no portion or amount may be appointed to a spouse of Raymond who is not a Qualified Spouse.*[12]

If Raymond did not exercise the Power of Appointment, or does not exercise it completely, the distribution scheme was decidedly more complex. First, if Raymond was survived by a spouse, whether or not a Qualified Spouse, a "Qualifying Trust" was to be set aside for that person. The amount set aside in the Qualifying Trust was to be "the smallest amount (which may be zero) necessary to reduce the Federal estate tax in Raymond's estate to the lowest possible amount (which may be zero)."[13] If no Qualifying Trust was funded, or if there were funds remaining in the Trust after the Qualifying Trust was funded, such funds were to be retained in a "Residuary Trust." The beneficiaries of the Residuary Trust are Raymond's Qualified Spouse during her lifetime, followed by four individuals: Kyle, Shamira Hammond ("Shamira"), Zyniah Hammond ("Zyniah"), and Soncera Hammond ("Soncera").[14]

The Trust Agreement does not define the term "spouse," but defines a "Qualified Spouse" as:

> a person who was lawfully married to such individual at the time of such individual's actual death, survived such individual by at least ten (10) days[,] and was residing with such individual at the time of such

---

[12] *Id*. at Art. 3(B), p. 3 (emphasis added) (other emphasis removed).
[13] *Id*. at Art. 3(B), p. 4.
[14] *Id*. at Art. 3(B), p. 6-7. As indicated above, Kyle is Lisa's son from a previous marriage. Shamira and Soncera are Raymond's nieces, and Zyniah is Raymond's great-niece.

4

individual's actual death or was then separated from such individual for reasons other than marital discord.[15]

Lisa concedes that she is neither a Qualified Spouse nor a "spouse" as those terms are used or defined in the Trust Agreement.[16]

In 2010, Raymond and Lisa separated and entered into an agreement (the "Property Settlement Agreement") regarding their marital property rights and obligations.[17] Lisa was represented by counsel when the Property Settlement Agreement was negotiated and signed.[18] The parties divided their assets, waived claims for alimony, and agreed that Lisa "shall remain, for her lifetime, the irrevocable beneficiary of [Raymond's] [T]rust with PNC and shall remain the beneficiary even after divorce."[19] The Property Settlement Agreement was incorporated into the parties' divorce decree and judgment, which was entered by

---

[15] *Id*. at Art. 13(E).

[16] *In re Trust of Hammond*, C.A. No. 10463, at 40-42 (Del. Ch. Oct. 15, 2015) (TRANSCRIPT). This concession is significant because an argument could be made that Lisa is a "spouse" if the term "spouse" in the Trust Agreement is given the definition ascribed to it in the Qualified Dispositions in Trust Act. In the Act, a spouse is defined as a person "to whom the transferor was married at, or before, the time the qualified disposition is made." Under that definition, Lisa would be a "spouse" because she was married to Raymond at the time he transferred assets into the Trust. If Lisa was a "spouse" under the Trust Agreement, she would be the beneficiary of any Qualifying Trust established under Article 3(B) of the Trust Agreement, but she would be barred from receiving any property appointed under the Power of Appointment. When I raised this issue during oral argument, both sides took the position that "spouse" should be given the meaning ordinarily accorded to that term, rather than the meaning ascribed to it in the Act. Accordingly, I assume that the term "spouse" in the Trust Agreement means someone legally married to Raymond at the time of his death, even if such person is not a Qualified Spouse.

[17] Pet. for Instrs. Ex. B.

[18] *Id*. at Art.IV, ¶ 3.

[19] *Id*. at Art. II, ¶ 6; *see also* Pet. for Instrs. Ex. B at Art. IV, ¶ 28 ("[Lisa] shall remain the irrevocable beneficiary of [Raymond's] [T]rust with PNC and shall remain the beneficiary even after divorce for her lifetime.").

the Superior Court of New Jersey, Chancery Division, Family Part on February 8, 2011.[20] New Jersey law governs the Property Settlement Agreement.[21]

Raymond and Lisa continued to maintain a friendly relationship after their divorce. On January 5, 2012, Raymond executed his last will & testament (the "Will"), a power of attorney, and an advanced health care directive. The power of attorney and health care directive named Lisa as Raymond's agent and representative, respectively. The Will similarly designated Lisa as the executor of Raymond's estate and named her as the sole heir of his "entire estate[,] whether such be real, personal[,] or mixed in nature, and wheresoever situate."[22] Importantly, Raymond's Will does not refer to the Power of Appointment or the Trust.

Raymond died on October 4, 2014. Shortly thereafter, Lisa filed a "Motion for Enforcement of Litigant's Rights" with the New Jersey court that issued the divorce decree, seeking a declaration that she is the Trust's sole beneficiary.[23] In response, PNC filed this Petition for Instructions, asking the Court to determine the proper distribution of Raymond's Trust, particularly whether Lisa is a beneficiary

---

[20] Pet. for Instrs. Ex. C.
[21] Pet. for Instrs. Ex. B, Article IV, ¶ 6.
[22] Pet. for Instrs. Ex. D, Clause 3.
[23] Pet. for Instrs. Ex. E.

6

of the Trust.[24]  Lisa answered the petition, as did Kyle.  Kyle filed a motion for judgment on the pleadings on July 13, 2015.

## II. ANALYSIS

This Court may enter judgment under Court of Chancery Rule 12(c) if the pleadings reveal that there are no material facts in dispute and the moving party is entitled to judgment as a matter of law.[25]  The standard governing a motion for judgment on the pleadings largely is the same as that governing a motion to dismiss under Court of Chancery Rule 12(b)(6):  the Court must accept all well-pleaded factual allegations as true and draw reasonable inferences in favor of the non-moving party.[26]  The Court need not, however, accept conclusory allegations or draw unreasonable inferences from the pleadings.[27]  A motion for judgment on the pleadings is the appropriate procedural setting to resolve an action to enforce an unambiguous contract.[28]

In support of his motion, Kyle argues that the Court interprets trusts according to the settlor's intent at the time the trust was created, and that the Trust Agreement unambiguously reflects Raymond's intent that any trust assets that

---

[24] The New Jersey court has since dismissed Lisa's action without prejudice.

[25] *Desert Equities, Inc. v. Morgan Stanley Lev. Equity Fund, II, L.P.*, 624 A.2d 1199, 1205 (Del. 1993).

[26] *Aveta Inc. v. Bengoa*, 2008 WL 5255818, at *2 (Del. Ch. Dec. 11, 2008); *Rag Am. Coal Co. v. AEI Res., Inc.*, 1999 WL 1261376, at *1 (Del. Ch. Dec. 7, 1999).

[27] *Aveta Inc.*, 2008 WL 5255818, at *2; *McMillan v. Intercargo Corp.*, 768 A.2d 492, 499-500 (Del. Ch. 2000).

[28] *Lillis v. AT&T Corp.*, 904 A.2d 325, 329-30 (Del. Ch. 2006).

were not appointed would be used to fund the Residuary Trust. Because he contends the Power of Appointment was not properly exercised in Raymond's Will, Kyle argues that the Court need not, and should not, consider Lisa's arguments about whether Raymond's intent may have changed at any time after the Trust's creation. Kyle contends that the Property Settlement Agreement, the divorce decree, and any statements Raymond may have made to friends or advisors are of no moment, because Raymond could not modify the Trust with those documents. Similarly, Kyle argues that evidence of Raymond's intent during or after the divorce is immaterial because this Court does not have the power to modify Raymond's Will, even if it concludes that doing so would be consistent with his intent.

Lisa agrees that the seminal rule of interpreting trusts is the settlor's intent, but she argues there is ample evidence, including the Property Settlement Agreement, the Will, the advanced healthcare directive, and the power of attorney, that Raymond wanted the Trust to go to Lisa. Lisa concedes that Raymond did not comply with the "technical terms" of the Power of Appointment, but she argues that, under *Carlisle v. Delaware Trust Co.*, this Court may, and indeed must, consider extrinsic evidence to determine whether the "donee"[29] of a power of appointment intended to exercise the power, even if the instrument allegedly

---

[29] That is, the person who may exercise the power of appointment.

8

executing the power is unambiguous.[30]   Lisa asserts that extrinsic evidence overwhelmingly supports the conclusion that Raymond intended to exercise the Power of Appointment in her favor, or at a minimum creates a factual dispute that precludes entry of judgment on the pleadings.

### A. The Trust Agreement is not ambiguous.

All the parties acknowledge – and purport to draw support from – the settled principles governing the construction of trust agreements.  The intent of a settlor controls the interpretation of his trust.[31]   The settlor's intent is drawn from language of the instrument, read as a whole, and in light of the circumstances surrounding its creation.[32]  Where the language of the trust is not ambiguous, the Court will not consider extrinsic evidence to construe the trust or determine the settlor's intent.[33]

That general rule regarding intent extends to the interpretation of powers of appointment contained within a trust.  The intent of the "donor"[34] of a power of appointment controls the scope of the power.[35]  Again, that intent is drawn from

---

[30] *See Carlisle v. Del. Trust Co.*, 99 A.2d 764, 771 (Del. Ch. 1953).
[31] *Chavin v. PNC Bank*, 816 A.2d 781, 783 (Del. 2003); *Dutra de Amorim v. Norment*, 460 A.2d 511, 514 (Del. 1983).
[32] *Dutra de Amorim*, 460 A.2d at 514; *In re Lammot du Pont Copeland Trust*, 2009 WL 1220623, at *3 (Del. Ch. Apr. 20, 2009).
[33] *Benz v. Wilmington Trust Co.*, 333 A.2d 169, 170 (Del. 1975); *Wilmington Trust Co. v. Huber*, 311 A.2d 892, 894 (Del. Ch. 1973).
[34] That is, the person who creates the power.
[35] *Norment v. Hanson*, 1981 WL 15103, at *5 (Del. Ch. Nov. 24, 1981).

the language in the trust instrument, and extrinsic evidence is irrelevant where the language is unambiguous.[36]

There is no real dispute in this case regarding Raymond's intent at the time he settled the Trust, nor does Lisa argue that the Power of Appointment clause in the Trust Agreement is ambiguous. Rather, she contends that the evidence she has marshaled demonstrates Raymond's intent – formed well after the Trust's creation – that Lisa would continue as a beneficiary of the Trust during her lifetime and despite their divorce. That argument fails for two independent reasons. First, Lisa has not identified any portion of the Trust that is ambiguous. Accordingly, the extrinsic evidence she offers cannot be considered in interpreting the Trust.[37] Second, even if Court could consider that evidence, Raymond's intent at the time he executed the Property Settlement Agreement, at the time he executed the Will, or at any time *other than* when he created the Trust is wholly irrelevant to the interpretation of the Trust Agreement. A settlor's intent at the time a trust is established is the controlling inquiry; an intent developed after creating a trust is irrelevant for purposes of construing the trust.[38]

Accordingly, the scope of the Power of Appointment is precisely what its terms indicate: Raymond gave himself a power of appointment allowing him to

---

[36] *Id*. at *5

[37] *Lillis v. AT&T Corp.*, 904 A.2d 325, 329-30 (Del. Ch. 2006); *Norment*, 1981 WL 15103, at *5.

[38] *Benz v. Wilmington Trust Co.*, 333 A.2d 169, 171 (Del. 1975). Accordingly, even if Lisa were seeking reformation of the Trust Agreement, that remedy would not be available because there was no mistake at the time the Trust Agreement was drafted.

designate one or more beneficiaries, other than prohibited beneficiaries, provided he did so in his last will and testament and specifically referenced the Trust in the will. The question then becomes whether Raymond effectively exercised the power and, if not, whether there is any remedy this Court may award Lisa if she prevails in proving Raymond intended to exercise the power.

## B. Raymond did not effectively exercise the Power of Appointment.

Delaware law does not impose upon the donee of a power of appointment any particular means or requirements of executing the power, except that the "intention to execute the power must be apparent and clear, so that the transaction is not susceptible of any other interpretation."[39] A person creating a power of appointment may, however, specify greater "formalities" that the donee must observe in order to execute the power.[40] Where such formalities are required, they must strictly be met in order for the power to be executed effectively.[41] In effect, those formalities replace the judicial inquiry into whether the donee's intent to execute the power was apparent and clear.[42]

Lisa acknowledges, as she must, that the Power of Appointment contained these additional formalities, by requiring Raymond to specifically reference the

---

[39] *Sloan v. Segal*, 2009 WL 1204494, at *12 (Del. Ch. Apr. 24, 2009).
[40] *Id.*
[41] *Id.*; *see also, In re Will of Daland*, 2010 WL 716160, at *3 (Del. Ch. Feb. 15, 2010) (Master's Report).
[42] *Sloan*, 2009 WL 1204494, at *12 ("the purpose of [specifying additional formalities] is to allow donors to impose additional ways of assuring that their donees intended to exercise the power of appointment.")

11

Trust in his last will and testament.[43]  She further concedes that Raymond did not observe these formalities because the Will makes no specific reference to the Trust.[44]  Lisa argues, however, that this Court may look beyond the language of the Will and consider extrinsic evidence to determine whether Raymond intended to exercise the power.

Lisa's argument finds some support in precedent, namely this Court's decision in *Carlisle v. Delaware Trust Co.*, but only if one considers that case in a vacuum and ignores more recent precedent that distinguishes between powers of appointment that require specific formalities for execution and those that do not. In *Carlisle*, this Court considered whether a testator intended by her will to execute a power of appointment she granted herself in a trust she created during her lifetime.[45]  The power did not require any specific formalities for execution.  This Court acknowledged the settled law that the intention to execute a power must be "apparent and clear, so that the transaction is not fairly susceptible of any other interpretation."[46]  At the time *Carlisle* was decided, previous decisions in Delaware had established three "classic" circumstances that had been deemed sufficient demonstrations of an intended execution of a power:  (1) a reference in the will, or other instrument, to the power, (2) a reference to the property which is the subject

---

[43] Lisa's Answering Br. in Opp'n to Kyle's Mot. for J. on the Pleadings ("Answering Br.") at 9.
[44] *Id*. at 1.
[45] *Carlisle v. Delaware Trust Co.*, 99 A.2d 764, 766 (Del. Ch. 1953).
[46] *Id*. at 767.

of the power, or (3) where the provision in the will or other instrument would otherwise be a nullity, except as an execution of the power.[47] To these three "classic categories," the *Carlisle* court added a fourth: whether, from an examination of the circumstances surrounding the making of the will, an intention to exercise the power is apparent and clear, notwithstanding the absence of any of the other three categories.[48] In making this examination of all the circumstances surrounding the creation of the will, the *Carlisle* court indicated it would consider extrinsic evidence, even where the will is clear and unambiguous.[49]

Lisa has not pointed to any other case applying this portion of the *Carlisle* opinion. More importantly, several recent decisions of this Court make clear that, whatever the continued viability of the standard announced in *Carlisle*, it does not apply when the power of appointment requires a donee to observe specific formalities in order to exercise the power. That is, on several occasions since *Carlisle* was decided, this Court has declined to consider extrinsic evidence, or

---

[47] *Id*. At oral argument, Lisa raised for the first time an argument that the third category might also apply in this case because, if the residuary clause in the Will did not refer to the Trust assets, that clause would be a "nullity" since Raymond had no other estate to distribute; all his non-Trust assets passed to Lisa by operation of law. As a practical matter, Lisa waived this argument by not raising it in her brief. Moreover, for the reasons that follow in my discussion of the *Carlisle* decision, I do not believe the Court may consider these other categories in determining Raymond's intent because Raymond failed to comply with the formalities required to execute the power.

[48] *Id*. at 768

[49] *Id*. at 770-71. The *Carlisle* court indicated that there were certain classes of extrinsic evidence that are generally admissible, and other classes that are generally inadmissible, for this inquiry. For purposes of the pending motion, additional discussion of those classes and comparison to Lisa's evidence is not warranted.

conclude that a donee intended to exercise the power, where the donee failed to observe the specific formalities required by the donor.[50] In fact, this Court reached that conclusion even when confronted with extrinsic evidence suggesting that the donee intended to exercise the power.[51] That conclusion is logical when one understands that *Carlisle* addressed what a court will consider in determining whether a donee exhibited a clear intent to exercise a power that contained no particular formalities to execution. In contrast, where a power contains such formalities, judicial inquiry into a donee's intent is not necessary because observance of the formalities is conclusive, and exclusive, proof of intent.

In her brief, Lisa also points out that the Separation Agreement specifically references the Trust.[52] For the reasons set forth above, however, that reference cannot rescue Raymond's ineffective exercise of the power. The Power of Appointment was testamentary, meaning Raymond only could execute it through his last will and testament. The Property Settlement was not a testamentary document.

---

[50] *Sloan*, 2009 WL 1204494, at *12 (Del. Ch. Apr. 24, 2009); *Norment v. Hanson*, 1981 WL 15103, at *8 (Del. Ch. Nov. 24, 1981). *See also In re Will of Daland*, 2010 WL 716160, at *3 (Del. Ch. Feb. 15, 2010) (Master's Report).
[51] *Hanson*, 1981 WL 15103, at *6-8.
[52] Answering Br. at 9.

**C. The relief Lisa seeks would require reformation of Raymond's Will, which this Court cannot grant.**

Having concluded that: (1) the Trust Agreement unambiguously required Raymond to observe certain formalities to exercise the Power of Appointment, and (2) Raymond did not observe those formalities in his Will, the only question remaining before the Court is whether there may be an equitable remedy available to Lisa to effect what she claims was Raymond's intent that she remain a beneficiary of the Trust during her lifetime. Aside from her argument that *Carlisle* allows the Court to consider extrinsic evidence in determining whether the Power of Appointment was exercised, Lisa has not articulated any form of equitable relief she believes is available to achieve the end she seeks.

Lisa expressly disclaims any effort to reform Raymond's Will.[53] Under existing Delaware law, which I am constrained to follow, this Court may not reform a will.[54] I confess some discomfort in so holding, because – if Lisa's extrinsic evidence is correct – the result not only defeats the testator's intent, but also allows him to avoid the contractual promises contained in the Settlement Agreement and incorporated in the New Jersey court's divorce decree. The conclusion is less than satisfying, but I do not believe this Court may deviate from Delaware Supreme Court precedent.

---

[53] *Id*. at 13.
[54] *Bird v. Wilmington Soc. of Fine Arts*, 43 A.2d 476, 480 (Del. 1945); *Miller v. Equitable Trust Co.*, 32 A.2d 431, 436 (Del. 1943).

15

Lisa has not argued that any other equitable remedy is available to her. Neither party addressed Restatement (Third) of Property § 19.10, which provides, in substance, that "substantial compliance" with the formal requirements for appointment is sufficient to exercise the power if (1) the donee knew of and intended to exercise the power, and (2) the donee's manner of attempted exercise did not impair a material purpose of the donor in imposing the formal requirements.[55] This substantial compliance standard is a fact-intensive inquiry that would preclude the entry of judgment on the pleadings.[56] Again, although this principle seems more consistent with the equitable powers of this Court, it contradicts Delaware precedent indicating that a donee must strictly comply with formalities for executing a power. In any event, since Lisa did not raise this potential remedy, I do not have the benefit of the parties' views on the matter.

Finally, Lisa has alluded to various claims she may have against the Trustee or against Raymond's legal advisors. Those claims are not pending in this action, however, and therefore do not serve as a basis to deny the motion for judgment on the pleadings.

**CONCLUSION**

For the foregoing reasons, and based on my conclusions that this Court is without power to reform a will and that the "substantial compliance" principle in

---

[55] Restatement (Third) of Property: Wills and Other Donative Transfers § 19.10 (2011).
[56] *Id*. § 19.10 comments b, c.

the Restatement conflicts with prior precedent, I recommend that the Court grant Kyle's motion for judgment on the pleadings. This is my final report and exceptions may be taken in accordance with Rule 144.

Respectfully submitted,

/s/ *Abigail M. LeGrow*
Master in Chancery