Phaedra ANNAN, Respondent
Below, Appellant,

v.

WILMINGTON TRUST COMPANY
Trustee u/a with William H. Donner
dated March 15, 1932 Successor Trustee
u/a between William H. Donner and
Montreal Trust Company dated August
6, 1940 and Trustee u/a with Dora Don-
ner Ide dated October 28, 1940, Peti-
tioner Below, Appellee,

and

Stephanie Kay Watters Hanson, Michelle
Dutra de Amorim and the minor and
unascertained issue of Donner Hanson,
Some of the Respondents Below, Appel-
lees.

Supreme Court of Delaware.

Submitted: May 31, 1988.
Decided: May 2, 1989.
Rehearing Denied: May 26, 1989.

David A. Drexler (argued), and Leone L.
Ciporin of Morris, Nichols, Arsht & Tun-
nell, Wilmington, for appellant.

Richard G. Bacon of Richards, Layton &
Finger, Wilmington, for appellee Wilming-
ton Trust Co.

Roger A. Akin (argued) of Sawyer & Akin, P.A., Wilmington, Guardian ad litem for Michelle Dutra de Amorim and the unascertained issue of Donner Hanson.

Joseph H. Geoghegan, and Daniel F. Lindley of Potter, Anderson & Corroon, Wilmington; David G. Dundas of Simon, McKinsey, Miller, Zommick, Sandor & Dundas, Irvine, Cal., of counsel, for Bank of California, Guardian of the Estate of Appellee Stephanie Kay Watters Hanson.

Before CHRISTIE, C.J., MOORE and WALSH, J.

MOORE, Justice.

This appeal arises out of a Request for Instructions filed by Wilmington Trust Company in its capacity as trustee for three trusts created by the William H. Donner family. We are confronted with the question of whether the terms "issue" and "lineal descendants" were intended under the terms of the trusts to include illegitimate offspring. Wilmington Trust petitioned the Court of Chancery for a determination of whether the illegitimate children of Donner Hanson, a grandson of William Donner and a beneficiary of each of the trusts, should be treated as "issue" or "lineal descendants" under the trusts. Hanson's legitimate daughter, Phaedra Annan, filed a brief arguing that illegitimate children should be excluded. Stephanie Kay Watters Hanson, an acknowledged illegitimate child of Hanson, and Michelle Dutra de Amorim, an unacknowledged illegitimate child, each argued for their inclusion under the terms of the trust. On cross motions for summary judgment the Court of Chancery, relying on the rule of *Haskell v. Wilmington Trust Co.*, Del.Supr., 304 A.2d 53 (1973), held that the terms "issue" and "lineal descendants" include illegitimates who can prove the paternity of Donner Hanson. We agree, and affirm.

## I.

### A. The Trusts

The objects of this dispute are three separate trusts, two created by William H. Donner and one created by Donner's daughter, Dora Donner Ide, at Donner's direction.

The first trust, created by Donner in 1932 (the "1932 trust") directs the trustee, Wilmington Trust Company, to pay the net cash income to Elizabeth Donner Norment, Donner's daughter, during her lifetime. Upon Norment's death three-quarters of the income is to be distributed to her "issue" per stirpes, until her last child dies or until twenty years and eleven months after the death of the last survivor of six named persons, whichever event occurs first. At that time, three-quarters of the principal is to be distributed to Norment's then living issue per stirpes. The remaining quarter is to be distributed pursuant to a special power of appointment granted to Norment, or, in the absence of the exercise of that power, it is to descend to her "lineal descendants" per stirpes.

The second trust was created in 1940 in Montreal (the "Montreal Trust"), and named Montreal Trust Company as trustee. Wilmington Trust is the successor trustee. The Montreal Trust provides that the income be paid to Norment during her lifetime and then upon her death, the trustee is directed to set aside the corpus in equal shares: a share for each then living child, and/or each deceased child with "issue". The issue of the predeceased children are to take from their single share in "equal shares *par souches* among such issue...." The beneficiaries are to receive income, at the trustee's discretion, until the age of 21, at which time the principal will be distributed to them.

The final trust (the "Ide Trust"), although naming Dora Donner Ide as settlor, was executed at the direction of William Donner in 1940. The Ide Trust directs the trustee, Wilmington Trust, to distribute income to the issue of William Donner, per stirpes, until the death of the last survivor of the settlor and fourteen other designated persons. At that time, the principal shall be distributed to the then living "issue" of William Donner, per stirpes.

Each of the three trusts included an exclusionary clause, which is integral to this case:

> Wherever reference is made in this instrument directly or indirectly to any issue or descendants of Donor, William H. Donner, such reference shall not include any person or persons being or claiming to be a child of said Robert Donner born prior to January 8, 1924, or any such person's descendants, but such person or persons and his, her or their respective descendants, heirs, executors, administrators and assigns are hereby definitely excluded from having any right, title, interest, estate or benefit under this trust in and to the property at any time held subject thereto.

### B. The Parties

Basically, the trusts are ultimately to be distributed, at least in part, to the "issue" and "lineal descendants" of William Donner, his daughter Mrs. Norment, and her then living children. Mrs. Norment died in 1980. Her one child, Donner Hanson, predeceased his mother in 1976. Donner had one child, Phaedra Annan Hanson ("Phaedra"), by his first wife. No dispute exists as to Phaedra's rights as a beneficiary under the trusts. However, there are others whose rights are not as clear.

Hanson fathered a second child by Rose Watters, to whom he was thereafter married. The child, Stephanie Kay Watters Hanson ("Stephanie"), was eventually legitimated by Hanson's stipulation to an order of a Colorado court, determining that Hanson was the father.

There is reason to suspect that Hanson may have sired other illegitimate children, but except for Stephanie he never acknowledged their paternity. Michelle Dutra de Amorim ("Michelle"), whose mother was romantically involved with Hanson nine months before her birth, also claims to be Hanson's child. *See Dutra de Amorim v. Norment*, Del.Supr., 460 A.2d 511 (1983). However, Hanson never married Michelle's mother, and Hanson's paternity of Michelle was never otherwise established.

### C. The Dispute

On July 30, 1984 the trustee, Wilmington Trust, filed a petition for instructions, raising the question of which persons qualified as "issue" or "lineal descendants" of William Donner, Elizabeth Norment and Donner Hanson. Specifically, Wilmington Trust requested directions regarding the acknowledged and unacknowledged illegitimate children of Donner Hanson.

Three answers were filed to the petition: one by Phaedra, another by Bank of California, guardian of Stephanie's estate, and a third by a court-appointed guardian *ad litem* for Michelle and Hanson's other unascertained children.

Thereafter, Phaedra moved for summary judgment, alleging that she alone was entitled to take under the trusts. Stephanie moved for summary judgment, claiming that she was entitled to take as well. The guardian for Michelle and the other unascertained children also moved for summary judgment, arguing that illegitimate children should be included within the class entitled to share in the trusts.

On June 18, 1987 the Court of Chancery denied Phaedra's motion for summary judgment and granted the others. The court based its decision on the applicability of the rule of *Haskell v. Wilmington Trust Co.*, Del.Supr., 304 A.2d 53 (1973), that absent a contrary intent expressed in the trust instrument, the laws of intestacy in effect at the time of ascertainment are controlling for purposes of defining "issue". The court held that Stephanie is "issue" entitled to share with Phaedra, and that Michelle and the others could also take as "issue" if they could legally establish Hanson's paternity.

Phaedra appeals, arguing 1) that *Haskell* has no application because its reasoning is flawed and it involved adopted children rather than illegitimates; and 2) that a retroactive application of *Haskell* unconstitutionally divests the class of legitimate issue of their property rights.

### II.

In this case we review the Vice-Chancellor's decision to apply *Haskell v. Wilming-*

*ton Trust* to this question of law. Thus, we review the record *de novo*. *Nardo v. Nardo,* Del.Supr., 209 A.2d 905 (1965).

██ We note first that the question of the unconstitutionality of a retroactive application of *Haskell* was not fairly presented to the court below. Accordingly, we decline consideration of that issue. Supreme Court Rule 8. Thus, we are left only with a determination of the meaning of "issue" or "lineal descendants" under the terms of the trusts.

### III.

██ We begin our analysis with the seminal rule of construction in trust cases: that the settlor's intent controls the interpretation of the instrument. *Dutra de Amorim v. Norment,* Del.Supr., 460 A.2d 511, 514 (1983); *Fiduciary Trust Company v. Fiduciary Trust Company,* Del. Supr., 445 A.2d 927, 980 (1982). Such intent must be determined "by considering the language of the trust instrument, read as an entirety, in light of the circumstances surrounding its creation." *Dutra De Amorim* at 514. If this analysis fails to resolve the conflict, we resort to rules of construction.

Read in their entirety, the trust instruments do not indicate whether illegitimate children fall under the definition of "issue".[1] The term is not defined in the documents. *Compare Dutra de Amorim,* 460 A.2d at 513. Furthermore, the circumstances surrounding the creation of the trusts do not tend to support one definition of "issue" over another.

Phaedra argues that the clause excluding the children of Robert Donner born before January 8, 1924 is evidence of Donner's intent to exclude illegitimates. This argument is without merit as the language of this clause does not mention illegitimacy,

nor does it give reasons for the exclusion of such persons. In short, the provision is irrelevant to the question here. Furthermore, as the trial court noted, even if we allowed Phaedra to explain the instrument with extrinsic evidence, the clause, at best, demonstrates only a will to exclude those persons outside of the family bloodline and not all illegitimates. Since the interpretation problem cannot be resolved by the analysis of the settlor's intent, we must resort to rules of construction.

The Court of Chancery held that the rule of *Haskell v. Wilmington Trust Co.,* Del. Supr., 304 A.2d 53 (1973), should control the construction of the trusts. That case decided the related question of whether adopted children were "issue" under the terms of an *inter vivos* trust and a testamentary trust. This Court adopted the modern rule that:

> the applicable law to the determining of a class following the termination of a life interest is the law as it exists on the date of ascertainment, unless the documents themselves demonstrate a clear intent on the part of the creator to limit the class as it was defined by law on the date of execution of the trusts.

304 A.2d at 54.[2] A similar interpretation was given to *Haskell* in *Jackson v. Riggs National Bank of Washington, D.C.,* Del. Supr., 314 A.2d 178, 181–82 (1973). The heart of Phaedra's argument is that the trial court erred in employing this rule, and that the laws as they existed at the time of creation of the trusts should apply.

Phaedra first argues that *Haskell* is inapplicable because it is based upon an illogical extension of a rule, which, although appropriately applied to the terms "heirs" and "next of kin", has no application to the term "issue". In essence Phaedra argues that while the terms "heirs" and "next of kin" inherently adopt the laws

---

**1.** We agree with the trial court that the settlors appear to have used "issue" and "lineal descendants" interchangeably. We refer to both as "issue".

**2.** We acknowledge that 12 *Del.C.* § 213 overturned the *Haskell* rule. However, the statute applies only to trusts which become irrevocable on or after August 1, 1984. See the Revisor's note to § 213.

of intestate succession, "issue" has no such connotation. The definitional section of Title 12 of the Delaware Code provides:

> For the purpose of wills, *intestate succession* and for all other purposes under this title, the following definitions shall apply:
>
> \*　\*　\*　\*　\*　\*
>
> (2) "Issue" of a person means all his lineal descendants of all generations, with the relationship of parent and child at each generation being determined by the definitions of child and parent contained in this title.
>
> \*　\*　\*　\*　\*　\*
>
> (6) "Heir" means those persons, including the surviving spouse, who are entitled under the statutes of intestate succession to the property of a decedent and shall include *kin and kindred.*

12 *Del.C.* § 101 (1987). (emphases added). From these definitions it appears that the terms "issue", "heir" and "kin" are all relevant terms relating to intestate succession. Whether these terms indeed "adopt the laws of intestate succession" is irrelevant and unnecessary for the purpose of this opinion. However, it is clear that the distinction between these terms advanced by Phaedra is not sufficient to defeat application of *Haskell.*

An ancillary argument to the first relates to the difference between adopted children and illegitimate children. Phaedra argues that the longstanding tradition consistently excluding illegitimates from inheritance rights distinguishes such situations from adopted children cases such as *Haskell,* where the laws of succession regarding adopted children were in a state of flux at the time of execution of the trusts. However, *Haskell* was not premised upon any uncertainty in the law at the time of creation of the trust. Rather, it was based on the notion that a settlor, unless he indicates otherwise, expects that the laws governing trusts will change and that the trust he created will be subject to those changes. Thus, the difference, if any, between the

jurisprudence regarding adopted children and illegitimate children has no bearing on the applicability of *Haskell* to this case.

■ Applying *Haskell* to the 1932 Trust and the Ide Trust we conclude that the Court of Chancery correctly determined that Stephanie is "issue" under the terms of the trust, and that Michelle and the other unascertained children of Hanson may be "issue" if they are able to establish the paternity of Hanson in the proper jurisdiction. The present law of intestate succession in Delaware clearly provides that illegitimates may inherit from the father if:

> a. The natural parents participated in a marriage ceremony before or after the birth of the child, even though the attempted marriage is void; or
>
> b. The paternity is established by an adjudication before the death of the father or is established thereafter by preponderance of the evidence; except, that the paternity established under this paragraph is ineffective to qualify the father or his kindred to inherit from or through the child unless the father has openly treated the child as his, and has not refused to support the child.

12 *Del.C.* § 508 (1987). Thus, Stephanie is clearly a "child" under this definition, while Michelle and any other illegitimate children must meet the above standards to take under the trusts.

### IV.

■ The Montreal Trust provided that Quebec law should govern its construction. Delaware courts will recognize a choice of law provision if the jurisdiction selected bears some material relationship to the transaction. *Wilmington Trust Co. v. Wilmington Trust Co.*, Del.Supr., 24 A.2d 309, 313 (1942). The Montreal Trust was created in Quebec and was initially administered in Quebec and thus the Vice Chancellor correctly upheld the choice of law provision.

■ Delaware Rule of Evidence 202(e) permits the court to rely on pleadings and

testimony in ascertaining the meaning of foreign law. Upon reviewing the trial court's application of Quebec law we find the court's reasoning and conclusions sound. The law of domicile of the father will govern a suit to determine legitimacy while the substantive law of Quebec governs the definition of "issue". Quebec law provides that if a child can prove paternity under the law of the father's domicile, the child may take under the trust. Accordingly, the outcome under the Montreal Trust mirrors the result reached under the 1932 Trust and Ide Trust.

Thus, in approving the Vice Chancellor's determination, that the definition of "issue" includes illegitimates who are formally "acknowledged" or are able to establish paternity by adjudication, we conclude that the interpretation governing this trust is wholly consistent with the court's earlier opinions in *Dutra de Amorim v. Norment,* Del.Supr., 460 A.2d 511 (1983), and *Jackson v. Riggs National Bank,* Del.Supr., 314 A.2d 178 (1973).

Therefore, the Court of Chancery's order granting the motions for summary judgment of Stephanie and Michelle *et al.,* and denying the motion for summary judgment by Phaedra, is hereby AFFIRMED.