# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| WELLS LORY HILLBLOM, f/k/a<br>NGUYEN BE LORY, | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | C.A. No. 2021-1034-MTZ |
| | ) | |
| WILMINGTON TRUST COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

Date Submitted: September 2, 2022
Date Decided: December 6, 2022

Paul D. Brown and Elliott Covert, CHIPMAN BROWN CICERO & COLE, LLP, Wilmington, Delaware; David Z. Ribakoff, RIBAKOFF LAW FIRM, Los Angeles, California, *Attorneys for Plaintiff Wells Lory Hillblom.*

Benjamin P. Chapple, REED SMITH LLP, Wilmington, Delaware; John M. McIntyre, PORTER WRIGHT MORRIS & ARTHUR LLP, Pittsburgh, Pennsylvania, *Attorneys for Defendant Wilmington Trust Company*.

**ZURN, Vice Chancellor.**

Larry Lee Hillblom, founder of the international shipping and courier company DHL, disappeared at sea in May 1995 and was declared legally dead shortly thereafter. His large estate was probated in the Superior Court of the Commonwealth of the Northern Marianas Islands. The plaintiff in this action, Wells Lory Hillblom, was two years old when those proceedings began, and came forward to establish he was Larry's biological son and an heir to that estate. Because Wells's family lacked the necessary funds to prosecute his claim, the Court appointed him a guardian ad litem, who retained legal counsel through a contingency fee agreement.[1] The guardian ad litem was successful in establishing Wells's paternity and entitlement to a share of Larry's estate. A trust was created to hold and manage Wells's share, and defendant Wilmington Trust Company was appointed as trustee.

In or around 2002, the guardian's counsel began seeking payment of its fee from the trust's share of an unliquidated asset. No agreement was reached, and the firm was not paid any fees derived from that asset. In 2010, the firm turned to Wilmington Trust for payment of the same fees from trust assets. Those conversations with Wilmington Trust continued for several years, and in 2016 the guardian's counsel offered to settle the claim for $300,000. Wilmington Trust did not accept or reject the offer and did not tell Wells about it. A few months later, the

_____

[1] In pursuit of clarity, I refer to Larry Hillblom and Wells Lory Hillblom by their first names. I intend no familiarity or disrespect.

firm sent Wilmington Trust an arbitration demand. Wilmington Trust directed the firm to sue Wells instead. The firm did.

Initially, Wells sought to join Wilmington Trust to the arbitration, but he was unsuccessful. Wilmington Trust then failed to meaningfully provide Wells with documents and employees with firsthand knowledge of the fee dispute discussions. In 2021, Wells settled the claim with his former guardian's counsel for $1,400,000.

Wells then brought this action against Wilmington Trust alleging various breaches of fiduciary duty and breaches of trust, primarily focusing on its failures to accept the 2016 settlement offer, to inform him that offer was ever made, and to arbitrate the dispute. Wilmington Trust moved to dismiss, arguing that Wells's claims go beyond the duties Wilmington Trust owes under the trust agreement, and that they are barred by laches.

After oral argument on the motion to dismiss, Wells moved to amend his complaint to add an additional claim for failure to inform based on agency law. Wilmington Trust opposed that amendment. This opinion holds that Court of Chancery Rule 15 does not permit a plaintiff to amend his complaint after he filed his answering brief but before the motion to dismiss is decided. Such a motion is properly considered only after the motion to dismiss is denied, where Rule 15(a) governs. Because the plaintiff limited his arguments to amending before the

3

resolution of the motion to dismiss and did not seek to amend under Rule 15(a), the motion to amend is denied without prejudice.

As to the motion to dismiss, I find that Wilmington Trust owes Wells all the duties owed by a trustee at common law because the trust agreement did not clearly and unambiguously waive those duties. The trust agreement specifically empowers Wilmington Trust to pay the firm's fee and defend against and resolve the firm's claim, which Wells has pled was against the trust. Thus, Wells has adequately pled his breach of fiduciary duty and breach of trust claims. Additionally, I find that the analogous statute of limitations is tolled because the injury was inherently unknowable. Accordingly, I deny the motion to dismiss as to all of Wells's claims.

## I.    BACKGROUND

After Larry Hillblom was declared dead, probate proceedings for his estate took place in the Superior Court of the Commonwealth of the Northern Marianas Islands (the "CNMI Court"). Larry's will predated plaintiff Wells Lory Hillblom's birth, and so Wells was not a beneficiary.[2] This, coupled with the fact that Wells was born out of wedlock, meant he needed to establish that he was Larry's biological son in order to inherit from Larry's estate.[3] In July 1997, the CNMI Court appointed Steven J. Grist as Wells's guardian ad litem for purposes of pursuing his claim.

---

[2] *See* D.I. 1, Ex. A, § 1(A) [hereinafter "Fee Agr."].

[3] *See* D.I. 1 ¶¶ 15–17; Fee Agr. at Recitals A–C.

4

Grist, on Wells's behalf, entered into a contingency fee agreement with the law firm Teilborg, Sanders & Parks ("Sanders & Parks" and the "Contingency Fee Agreement"). The Contingency Fee Agreement states that Sanders & Parks would be entitled to 30% of any "recovery," defined as follows:

> The Recovery shall be defined as all payments or distributions of money or assets received by or allocable to or for the benefit of [Wells] from the Hillblom Estate by reason of his paternity and heirship claim. The Recovery shall be calculated as [Wells's] allocable share of the Hillblom estate as a pretermitted heir, net of Estate administration expenses and estate liabilities but before payment by the Estate of allocable estate taxes.[4]

Thus, Sanders & Parks would be entitled to 30% of the total value of money and assets received by Wells in the prosecution of his heirship claim, minus expenses. The Contingency Fee Agreement contemplated that all money and assets obtained in the proceeding would be placed in a trust.[5] The Contingency Fee Agreement also included a provision requiring that any dispute arising out of the Contingency Fee Agreement be resolved in an arbitration "held in Saipan and conducted by an arbitrator appointed by the Chief Judge of the CNMI Superior Court."[6]

The CMNI Court approved a settlement agreement that "established a structure and procedures for managing the probate" of Larry's estate in December

---

[4] Fee Agr. §§ II(A), II(D).

[5] *Id.* § II(A).

[6] *Id.* § VI(A).

1997, and approved the Contingency Fee Agreement in January 1998.[7] Wells ultimately established Larry was his biological father, entitling him to a portion of Larry's estate.

In 1999, a trust was established to manage Wells's inheritance (the "Trust"). The CMNI Court appointed Wilmington Trust Company as sole trustee. The terms of the Trust and Wilmington Trust's related obligations are defined by a trust agreement (the "Trust Agreement").[8] That agreement provides Wells will receive interim distributions from ages eighteen to twenty-five, and then access to all Trust assets when he reaches age thirty.[9] Before then, the Trust Agreement gives the trustee discretion to make limited payments from Trust income for certain purposes.[10] Most relevant here, the Trust Agreement provides that the trustee "shall have the power to use income and principal of the trust to pay debts and expenses of [Wells] attributable to the proceedings relating to [Larry's estate], including without limitation, legal fees based upon the fee agreements [Wells] has with . . . Sanders &

---

[7] D.I. 1 ¶ 20.

[8] D.I. 1, Ex. B [hereinafter "Trust Agr."].

[9] *Id.* § A, art. III(D).

[10] *Id.* § A, art. III(A)–(B).

Parks . . . ."[11]  The Trust Agreement also includes a spendthrift provision and a Delaware choice of law provision.[12]

Among the Trust's assets is a 14.85% interest in ARW, LLC, "a corporate investment vehicle used to hold assets of [Larry's] estate that could not be distributed upon closure of the Estate proceedings."[13]  The facts in the Complaint support the inference that ARW was not easily valued, and Wells characterizes the value as fluctuating and "often speculative."[14]  "Beginning in or about 2001, [Wilmington Trust] and the Trust began receiving liquidated payments from the ARW asset."[15]

In 2002, Sanders & Parks began corresponding with Grist as to the payment of its fees "from distributions of . . . [ARW]."[16]  They could not reach an agreement on how the ARW assets should be valued for purposes of paying those fees.

In 2010, when Wells was sixteen years old, Sanders and Parks began communicating with Wilmington Trust regarding the unpaid fees.  Though Wilmington Trust acknowledged the obligation to pay Sanders & Parks "from assets and distributions received through ARW," it "requested that Sanders & Parks defer

---

[11] *Id.* § A, art. III(F).

[12] *Id.* § B, art. III(B), (H).

[13] D.I. 1 ¶ 27.

[14] *Id.* ¶ 38.

[15] *Id.* ¶ 27.

[16] *Id.* ¶ 26.

payment in order to enable a comprehensive valuation of ARW's worth."[17]   The Complaint alleges Wilmington Trust corresponded with Sanders & Parks repeatedly during this time, and "represented itself as the appropriate party for Sanders & Parks to deal with in the dispute under the Fee Agreement."[18]   This correspondence continued from 2010 to 2017, and Wilmington Trust "repeatedly asked Sanders & Parks to defer receipt of payment pending completion of [Wilmington Trust's] analysis of the value of the ARW asset."[19]   Wilmington Trust never notified Wells that it was communicating with Sanders & Parks about the Contingency Fee Agreement.

On December 6, 2016, Sanders & Parks sent a settlement proposal to Wilmington Trust, offering to settle the dispute for $300,000 and a release of any future claims for fees (the "Settlement Offer").  That offer was based on Wilmington Trust's 2006 valuation of ARW, from which Wells's interest was valued at $1,039,500.  Wilmington Trust did not accept or reject the offer or inform Wells that it was made.

On June 30, 2017, Sanders & Parks sent Wilmington Trust an arbitration demand seeking fees relating to ARW's value.  Wilmington Trust, through counsel,

---

[17] *Id.* ¶ 29.

[18] *Id.* ¶ 31.

[19] *Id.* ¶ 32.

continued to engage with Sanders & Parks, stating "that [Wilmington Trust] was interested in resolving the fee dispute," and "represent[ing] that [Wilmington Trust] would prepare a settlement proposal."[20] Once the arbitration proceedings began, Wilmington Trust claimed it was not a party to the Fee Agreement and could not be compelled to arbitrate. Instead, Wilmington Trust "directed Sanders & Parks to sue Wells directly."[21]

On February 25, 2019, Sanders & Parks did just that, and haled Wells into arbitration. During the arbitration, Wilmington Trust did not assist Wells as much as he believes it should have. The Complaint alleges "[Wilmington Trust]'s assistance to Wells consisted of little more than providing limited document production on a sporadic basis" and Wilmington Trust "did not provide Wells' counsel with access to material witnesses . . . who had personal knowledge of the facts surrounding the dispute."[22] Additionally, Wilmington Trust did not reveal to Wells the existence of the Settlement Offer or explain the reasons it did not accept it. Wells attempted to join Wilmington Trust to the arbitration as an indispensable party, but his efforts failed. The arbitrator similarly declined Wells's request to litigate the matter in court so that Wilmington Trust could be joined. Wells

---

[20] *Id.* ¶ 44.

[21] *Id.* ¶ 48.

[22] *Id.* ¶ 52.

9

ultimately settled the dispute for $1,400,000—$1,100,000 more than Sanders & Parks's 2016 Settlement Offer. Wells first learned of the Settlement Offer during those arbitration proceedings.

Wells filed his complaint in this action (the "Complaint") on November 29, 2021.[23] Count I alleges Wilmington Trust breached its fiduciary duties in three ways. First, it alleges Wilmington Trust breached its fiduciary duties by failing to accept the Settlement Offer. Second, Wells claims Wilmington Trust breached its fiduciary duties by claiming it was not subject to arbitration "and instead effectively directing Sanders & Parks to sue Wells personally in its place."[24] Third, Wells alleges Wilmington Trust breached its fiduciary duties "by failing to provide Wells or his counsel with meaningful assistance" during the arbitration.[25] Count II alleges Wilmington Trust committed two breaches of trust: failing to pay Sanders & Parks's attorneys' fees, and failing to inform Wells of the 2016 Settlement Offer.[26]

---

[23] D.I. 1.

[24] *Id.* ¶ 60.

[25] *Id.* ¶ 61.

[26] A claim that a trustee breached a fiduciary duty owed to a beneficiary is a claim for breach of trust. 12 *Del. C.* § 3581(a) ("A violation by a trustee of a duty the trustee owes to a beneficiary is a breach of trust."). Nevertheless, I evaluate these claims as Wells pled them.

10

Wilmington Trust filed a motion to dismiss both counts under Court of Chancery Rule 12(b)(6) on January 21, 2022.[27] Wilmington Trust argues both counts should be dismissed because it lacked the power to settle the fee dispute, the Trust Agreement imposes no duty to arbitrate, and the Trust Agreement imposes no duty to assist Wells in the arbitration. Wilmington Trust also argues that the doctrine of laches bars "most" of Wells's claims.[28] Wells filed an answering brief,[29] and Wilmington Trust replied.[30]

I heard oral argument on April 1.[31] At the hearing, I requested supplemental briefing on whether Wilmington Trust assumed fiduciary duties by engaging with Sanders & Parks regarding the unpaid fees.[32] Wilmington Trust submitted its supplemental briefing on April 29.[33] Wells took a different approach: on May 3, he emailed Wilmington Trust requesting consent to file an amended complaint to add additional factual allegations and a new claim for breach of the duty of disclosure

---

[27] D.I. 12, Motion to Dismiss.

[28] D.I. 12, Opening Brief in Support of Motion to Dismiss at 13 [hereinafter "Opening Br."].

[29] D.I. 16.

[30] D.I. 19.

[31] D.I. 21; D.I. 22.

[32] D.I. 21; D.I. 22 at 70–71.

[33] D.I. 25.

based in agency law.[34]  When Wilmington Trust declined, Wells moved for leave to amend.[35]  That same day, Wells moved for relief from the motion to dismiss briefing schedule.[36]  The parties briefed both motions.[37]

## II.    ANALYSIS

I first address Wells's motion to amend the Complaint.  I conclude that our procedural rules do not contemplate an amendment after filing an answering brief to a motion to dismiss.

On Wilmington Trust's motion to dismiss, I conclude Wells has adequately pled all of his breach of fiduciary duty and breach of trust claims.  Finally, I conclude that the applicable statute of limitations is tolled under the discovery rule.

### A.    Wells's Motion To Amend

After the motion to dismiss was fully briefed and argued, and the parties were charged with supplemental briefing, Wells moved to file an amended complaint adding a claim for breach of the duty of disclosure and allegations concerning the roles Grist and Wilmington Trust played during the negotiations over the fee

---

[34] D.I. 31 ¶ 11.

[35] D.I. 31.

[36] D.I. 30.

[37] D.I. 33; D.I. 37; D.I. 43; D.I. 45.

12

dispute.[38]  His proposed amendment also incorporates additional documents that were presumably in his possession when he filed suit.

This Court's Rules are simple on this point.

> In cases where a motion to dismiss has been filed, this Court has interpreted Rule 15(aaa) as allowing amendments or motions for leave to amend "in only two situations: (i) before the due date of a brief responding to the motion to dismiss, and (ii) after the court decides that dismissal is warranted." In the first scenario, the motion is governed by the liberal standards of Rule 15(a).  In the second scenario, the motion is governed by Rule 15(aaa), which requires a showing of good cause why dismissal with prejudice would not be just under all the circumstances.[39]

As our Supreme Court has put it, "when [a plaintiff is] confronted with a motion to dismiss . . . [she may] elect to either:  stand on the complaint and answer the motion; or, to amend or seek leave to amend the complaint before the response to the motion was due."[40]  "Rule 15(aaa) does not contemplate the possibility of filing a motion to amend after the responsive brief is filed and before a decision by the court dismissing the complaint."[41]  Our Rules offer plaintiffs no opportunity to move to amend while an opposed motion to dismiss is pending.[42]  The purpose of Rule 15(aaa) is "to

---

[38] D.I. 31.

[39] *TVI Corp. v. Gallagher*, 2013 WL 5809271, at *21 (Del. Ch. Oct. 28, 2013) (footnote omitted).

[40] *Braddock v. Zimmerman*, 906 A.2d 776, 783 (Del. 2006).

[41] *Stern v. LF Cap. P'rs, LLC*, 820 A.2d 1143, 1146 (Del. Ch. 2003).

[42] *See id.*

13

eliminate (or at least sharply curtail) instances in which this court is required to adjudicate multiple motions to dismiss the same action."[43]

Wells's motion to amend does not rely on Rule 15(a) or (aaa). Rather, he looks to the circumstances in *Franklin v. Crowley*,[44] in which the Court granted leave to amend after the defendants made new arguments in their reply brief, at oral argument, and in supplemental briefing, including that the plaintiffs lacked standing.[45] Typically, such arguments are waived.[46] But the new issues included standing, which is a question of subject matter jurisdiction and therefore cannot be waived.[47] The plaintiffs responded by moving for leave to amend, seeking, among other things, to add a new plaintiff in furtherance of resolving any potential lack of standing.[48] The *Franklin* Court was duty-bound to consider the defendants' new standing arguments and to give the plaintiffs a fair opportunity to respond.[49] The

---

[43] *Id.* at 1143.

[44] 2006 WL 3095952 (Del. Ch. Oct. 19, 2006).

[45] *Id.* at *4–5.

[46] *Emerald P'rs v. Berlin*, 726 A.2d 1215, 1224 (Del. 1999) ("Issues not briefed are deemed waived."); *Asbestos Workers Loc. 42 Pension Fund v. Bammann*, 2015 WL 2455469, at *20 (Del. Ch. May 21, 2015) (declining to consider argument raised for first time at oral argument).

[47] *See Rodriguez v. Great Am. Ins. Co.*, 2022 WL 591762, at *5 (Del. Super. Ct. Feb. 23, 2022) ("[A] challenge to a plaintiff's standing to sue traditionally is regarded as a challenge to the court's exercise of subject matter jurisdiction . . . .").

[48] *Franklin*, 2006 WL 3095952, at *4–5.

[49] *See Rodriguez*, 2022 WL 591762, at *5; *Friends of Sandbar Village v. Sandcap, LLC*, 2019 WL 2027660, at *1 n.1 (Del. Ch. May 08, 2019) ("Standing is a threshold question that is jurisdictional in nature, and may be raised *sua sponte*."); *Thornton v. Bernard Techs.,*

Court granted the motion, emphasizing the lack of notice to the plaintiffs. In so doing, the Court reasoned the motion "violated the spirit, if not the letter, of Rule 15(aaa),"[50] and ordered the plaintiffs to "reimburse [the defendants] for at least a portion of their reasonable attorneys' fees and costs" for causing unnecessary briefing and argument on the motion to dismiss.[51] The Court rejected the argument that a request for supplemental briefing was a per se exception to Rule 15(aaa).[52]

So too here: this Court's request for supplemental briefing does not support granting Wells leave to amend. *Franklin* rejected the argument that a plaintiff may amend upon a request for supplemental briefing "as overly broad and inconsistent with the purpose of Rule 15(aaa)."[53] And unlike the defendant in *Franklin*, Wilmington Trust did not raise nonwaivable grounds for dismissal for the first time on reply or at oral argument. Here, as in the vast majority of cases, any new argument Wilmington Trust made on reply or at argument is waived—not a basis to

---

*Inc.*, 2009 WL 426179, at *4 (Del. Ch. Feb. 20, 2009) ("Standing refers to a plaintiff's right to invoke the jurisdiction of a Court to redress his grievance. Standing is a threshold question, and, because standing is jurisdictional in nature, the Court may raise it *sua sponte*."); *Parseghian v. Frequency Therapeutics, Inc.*, 2022 WL 2208899, at *5 (Del. Ch. June 21, 2022) ("[T]his court has a 'duty to determine' whether it has subject matter jurisdiction over the claims." (quoting *In re Coinmint, LLC*, 261 A.3d 867, 904 (Del. Ch. 2021)).

[50] *Franklin*, 2006 WL 3095952, at *6.

[51] *Id.*

[52] *Id.* at *5.

[53] *Id.*

15

amend.[54]  The other cases on which Wells relies considered leave to amend in the settings Rule 15 permits, not pending the resolution of a motion to dismiss.[55]

Ordinarily, efficiency would support considering Wells's motion to amend as if it were filed after the motion to dismiss were resolved.[56]  But Wells's motion never mentions Rule 15(a).  The motion to amend is denied without prejudice to move under that standard.

### B.  Wilmington Trust's Motion to Dismiss

I now turn to Wilmington Trust's motion to dismiss.  The standard governing a motion to dismiss under Court of Chancery Rule 12(b)(6) for failure to state a claim for relief is well settled:

> (i) [A]ll well-pleaded factual allegations are accepted as true; (ii) even vague allegations are "well-pleaded" if they give the opposing party notice of the claim; (iii) the Court must draw all reasonable inferences in favor of the non-moving party; and [(iv)] dismissal is inappropriate unless the "plaintiff would not be entitled to recover under any reasonably conceivable set of circumstances susceptible of proof."[57]

---

[54] *See Bammann*, 2015 WL 2455469, at *20 (finding argument raised for the first time at oral argument was waived).

[55] *See TVI Corp.*, 2013 WL 5809271, at *21 ("To avoid requiring a re-filing of the Motion to Amend and incurring needless delay and additional expense, however, I now consider the Motion to Amend and treat it as if it had been submitted after my disposition of the Motion to Dismiss."); *In re USG Corp. S'holder Litig.*, 2021 WL 930620, at *2–3 (Del. Ch. Mar. 11, 2021) (addressing motion to amend after motion to dismiss was granted), *aff'd sub nom. Anderson v. Leer*, 265 A.3d 995 (Del. 2021).

[56] *See TVI Corp.*, 2013 WL 5809271, at *21; *Stern*, 820 A.2d at 1146–47.

[57] *Savor, Inc. v. FMR Corp.*, 812 A.2d 894, 896–97 (Del. 2002) (footnotes omitted).

The touchstone "to survive a motion to dismiss is reasonable 'conceivability.'"[58] This standard is "minimal"[59] and plaintiff-friendly.[60] "Indeed, it may, as a factual matter, ultimately prove impossible for the plaintiff to prove [its] claims at a later stage of a proceeding, but that is not the test to survive a motion to dismiss."[61] Despite this forgiving standard, the Court need not accept conclusory allegations unsupported by specific facts or draw unreasonable inferences in favor of the nonmoving party.[62] "Moreover, the court 'is not required to accept every strained interpretation of the allegations proposed by the plaintiff.'"[63] In determining whether to grant a motion to dismiss, the Court may consider any documents incorporated into the complaint by reference.[64]

The Complaint contains a multifaceted breach of fiduciary duty count, and a two-pronged breach of trust count. Wilmington Trust's motion asserts that it did not

---

[58] *Cent. Mortg. Co. v. Morgan Stanley Mortg. Cap. Hldgs. LLC*, 27 A.3d 531, 536–37 (Del. 2011).

[59] *Id.* at 536.

[60] *E.g.*, *Clouser v. Doherty*, 175 A.3d 86, 2017 WL 3947404, at *9 (Del. 2017) (TABLE); *USG Corp.*, 2021 WL 930620, at *3–4; *In re Trados Inc. S'holder Litig.*, 2009 WL 2225958, at *8 (Del. Ch. July 24, 2009).

[61] *Cent. Mortg.*, 27 A.3d at 536.

[62] *E.g.*, *Clinton v. Enter. Rent-A-Car Co.*, 977 A.2d 892, 895 (Del. 2009) (citations omitted).

[63] *Trados*, 2009 WL 2225958, at *4 (internal quotation marks omitted) (quoting *In re Gen. Motors (Hughes) S'holder Litig.*, 897 A.2d 162, 168 (Del. 2006)).

[64] *Wal-Mart Stores, Inc. v. AIG Life Ins. Co.*, 860 A.2d 312, 320 (Del. 2004).

owe Wells a duty to perform any of the actions Wells claims are breaches. I conclude all of Wells's claims survive Wilmington Trust's motion to dismiss.

### 1. Wilmington Trust Had The Duty And Power To Defend And Settle Sanders & Parks's Claim.

Count I of the Complaint asserts three breach of fiduciary duty claims. "The elements of a claim for breach of fiduciary duty are: (i) that a fiduciary duty exists; and (ii) that a fiduciary breached that duty."[65] Wilmington Trust focuses on the first element, asserting it was simply not obliged or empowered to take any of the actions Wells claims it should have taken. As support, Wilmington Trust argues the Trust Agreement does not expressly impose such duties or grant the power to accept the Settlement Offer. This argument is based on the faulty premise that a trustee by default owes only those duties enumerated in the Trust Agreement to the exclusion of common law duties, and a cramped reading of the Trust Agreement.[66]

---

[65] *Hardy v. Hardy*, 2014 WL 3736331, at *11 (Del. Ch. July 29, 2014).

[66] *See* D.I. 12 at 7.

Wilmington Trust first attempts to cabin its duties to only those enumerated in the Trust Agreement. A trustee owes the duties imposed on it by common law unless the trust agreement contains a clear and unambiguous waiver or limitation of those duties.[67] A trust agreement may "expand, restrict, eliminate, or otherwise vary" a fiduciary's duties.[68] Here, the Trust Agreement does not disclaim any fiduciary duties, and in fact states that the trustee is "subject always to the obligations of a fiduciary."[69] Wilmington Trust does not argue otherwise. Wilmington Trust owes all the duties a trustee owes at common law, in addition to the obligations imposed by the Trust Agreement.

At common law, trustees owe the duties of "loyalty, good faith, and due care."[70] Specifically, the common law imposes on trustees a duty to take reasonable

---

[67] *See* 12 *Del. C.* § 3324(b); *In re Nat'l Collegiate Student Loan Trs. Litig.*, 251 A.3d 116, 185, 190 (Del. Ch. 2020) (interpreting 12 *Del. C.* § 3324 as permitting one to eliminate or waive common law fiduciary duties); *United Bhd. of Carpenters Pension Plan v. Fellner*, 2015 WL 894810, at *3 (Del. Ch. Feb. 26, 2015).

[68] 12 *Del. C.* § 3303(a).

[69] Trust Agr. § B, art. II § A(1); *see also id.* § B, art. II(1).

[70] *In re Nat'l Collegiate Student Loan Trs. Litig.*, 251 A.3d 116, 185 (Del. Ch. 2020) (internal quotation marks omitted) (quoting *Cinerama, Inc. v. Technicolor, Inc.*, 663 A.2d 1134, 1148 (Del. Ch. 1994)).

steps to "defend actions which may result in a loss to the trust estate"[71] and inform the beneficiary of certain matters relating to the trust.[72]

Wilmington Trust also argues the Trust Agreement does not grant it the power to perform the actions underlying Wells's claims, and so it owed no duty to do so. Before one can owe a duty, she must have the power to carry out that duty; a fiduciary cannot owe a duty that she lacks the power to fulfill.[73] The Trust Agreement enumerates specific powers held by the trustee. "Delaware courts apply

---

[71] *See* Restatement (Second) of Trusts § 178 (1959); *id.* at cmt. b ("If it reasonably appears to be for the benefit of the beneficiary, the trustee can properly compromise or arbitrate such claims."); Restatement (Third) of Trusts § 76 (2007) (noting duty to "protect[] trust property"); *id.* at cmt. d ("The duty of protecting the trust estate includes taking reasonable steps to enforce or realize on other claims held by the trust and to defend actions that may result in a loss to the trust estate. Reasonable steps may include . . . compromise or arbitration of claims by or against the trust . . . ."); Restatement (Second) of Trusts § 192 (1959) ("The trustee can properly compromise, submit to arbitration or abandon claims affecting the trust property, provided that in so doing he exercises reasonable prudence."); *see also Cargill, Inc. v. JWH Special Circumstance LLC*, 959 A.2d 1096, 1113 n.68 (Del. Ch. 2008) (recognizing a trustee's duty "to defend actions").

[72] *See* Restatement (Third) of Trusts § 82(1)(c) (2007); *McNeil v. McNeil*, 798 A.2d 503, 509 (Del. 2002) (noting existence of separate duty to provide information); George G. Bogert et. al., *Bogert's the Law of Trusts and Trustees* § 962 (3d. 2020) [hereinafter *Bogert's*] ("[T]he trustee is under a duty, independent from the duty of care, to inform the beneificayr of important matters concerning the trust . . . .").

[73] *See In re Nat'l Collegiate Student Loan Trs.*, 251 A.3d at 187 (reasoning that fiduciary duties "arise only to the extent that one exercises 'control over the property of another'" (quoting *Stewart v. Wilm. Tr. SP Servs., Inc.*, 112 A.3d 271, 297 (Del. Ch. 2015)); *JER Hudson GP XXI LLC v. DLE Invs., LP*, 275 A.3d 755, 788 (Del. Ch. 2022) ("This Court has held that because a partnership's purpose limits a general partner's fiduciary duties, a failure to take an *ultra vires* act cannot be a breach of fiduciary duty." (citing *Cincinnati Bell Cellular Sys. Co. v. Ameritech Mobile Phone Servs. of Cincinnati, Inc.*, 1996 WL 506906 (Del. Ch. Sept. 3, 1996))).

20

a 'seminal' rule of construction when interpreting trust agreements: 'the settlor's intent controls the interpretation of the instrument.'"[74] To determine that intent, the Court will look to the trust agreement's language as a whole and "in light of the circumstances surrounding [the trust agreement's] creation."[75] In other words, the Court "determine[s] the settlor's intent based on the specific language of the trust instruments."[76] Where the language of the trust agreement is unambiguous, the Court should rely on it to establish the settlor's intent and should not consider extrinsic evidence.[77]

Against the backdrop of common law duties and the terms of the Trust Agreement, I consider Wilmington Trust's arguments that it did not owe any duty to accept the Settlement Offer, arbitrate against Sanders & Parks, or support Wells in arbitration. I conclude it is reasonably conceivable that it owed all three.

---

[74] *In re Peierls Fam. Inter Vivos Trs.*, 77 A.3d 249, 263 (Del. 2013) (quoting *Annan v. Wilm. Tr. Co.*, 559 A.2d 1289, 1292 (Del. 1989)).

[75] *Id.* (internal quotation marks omitted) (quoting *Annan*, 559 A.2d at 1292).

[76] *Id.*

[77] *Wilm. Tr. Co. v. Mills*, 2021 WL 2620585, at *8 (Del. Ch. June 25, 2021) ("Just as a court relies on the unambiguous language of a contract to establish the parties' intent, a court relies on the unambiguous language of a trust instrument establishes the settlor's intent.").

### a. It Is Reasonably Conceivable That Wilmington Trust Owed A Duty To Settle The Fee Dispute.

Wilmington Trust argues that the Trust Agreement empowers it to settle only claims that are brought "by or against the trust,"[78] and that Sanders & Parks's claim is against Wells, not the Trust. This argument disregards the language of the Trust Agreement and Wells's Complaint.

The Trust Agreement explicitly grants Wilmington Trust the power to pay Sanders & Parks's fees. The Trust Agreement specifies that Wilmington Trust

> shall have the power to use income and principal of the trust to pay debts and expenses of [Wells] attributable to the proceedings relating to the estate of Larry Lee Hillblom, *including, without limitation, legal fees based upon the fee agreements [Wells] has with . . . Sanders & Parks* . . . .[79]

Beyond that specific grant, the Trust Agreement also empowers Wilmington Trust to pay claims and settle claims against the Trust. Section B, article IV, subsection 19 ("Subsection 19") confers the following powers:

> To pay or contest any claim; to settle a claim by or against the trust by compromise, arbitration, or otherwise; to release in whole or in part any claim belonging to the trust; and to prosecute or defend actions, claims, or proceedings for the protection of trust assets, and of the Trustee in the performance of the Trustee's duties.[80]

---

[78] Opening Br. at 9.

[79] Trust Agr. § A, art. III(F) (emphasis added).

[80] *Id.* § B, art. II(19).

22

This language grants Wilmington Trust the broad power to "pay or contest *any* claim,"[81] whether or not it is "by or against the trust." *Black's Law Dictionary* defines "claim" as "[t]he assertion of an existing right; any right to payment or to an equitable remedy, even if contingent or provisional."[82] As pled, Sanders & Parks's request under the Fee Agreement for payment from Trust property is a "claim" Subsection 19 grants Wilmington Trust the power to pay.

Subsection 19 also grants Wilmington Trust the power to "settle a claim by or against the trust by compromise, arbitration, or otherwise." [83] Wells has pled the claim Sanders & Parks negotiated with Wilmington Trust was "by or against the trust." The Complaint alleges Sanders & Parks sought payment "from distributions of a Trust asset called ARW," and that those distributions were made to Wilmington Trust and the Trust.[84] Between 2010 and 2019, Sanders & Parks communicated directly with Wilmington Trust rather than with Wells or Grist, and Wilmington Trust did not dispute the obligation to pay some amount of fees. Sanders & Parks presented its settlement offer to Wilmington Trust—not Wells. Wilmington Trust evaluated the Settlement Offer on its own, without consulting or informing Wells that Sanders & Parks made an offer to settle a claim against him personally. Viewed

---

[81] *Id.* (emphasis added).

[82] *Claim*, Black's Law Dictionary (11th ed. 2019).

[83] Trust Agr. § B, art. IV(19).

[84] D.I. 1 ¶ 8.

in the light most favorable to Wells, these allegations plead Sanders & Parks sought to recover directly from the Trust and attempted to obtain funds held by the Trust. The Complaint describes Sanders & Parks's claim as one "by or against the trust."[85]

The Trust Agreement gave Wilmington Trust the specific power to pay Sanders & Parks and its claim. It is also reasonably conceivable that Sanders & Parks's claim is "by or against the trust," such that the Trust Agreement also grants Wilmington Trust the power to "settle" that claim "by compromise." Wilmington Trust's motion to dismiss Wells' claim for failure to pay Sanders & Parks is denied.

### b. It Is Reasonably Conceivable That Wilmington Trust Owed A Duty To Defend Against The Arbitration.

It is also reasonably conceivable that Wilmington Trust had the duty and power to defend against Sanders & Parks's claim against the Trust in the arbitration against Wells. As explained, Wilmington Trust owed Wells the common law duty to take reasonable steps to "defend actions which may result in a loss to the trust estate."[86] And Subsection 19 empowered Wilmington Trust to "defend actions,

---

[85] As Wilmington Trust correctly points out, Section B, article III, subsection (B) of the Trust Agreement provides that creditors cannot reach the Trust's assets. Whether Sanders & Parks could have prevailed on its claim is a different question than whether its claim was lodged by or against the Trust.

[86] *See supra* note 71.

claims, or proceedings for the protection of trust assets," and to "settle a claim by or against the trust by . . . arbitration."[87]

Wilmington Trust asserts it owed no duty to defend the arbitration because Trust assets were not at risk in that proceeding, reasoning the arbitrator had no authority to order payments out of the Trust as neither the Trust nor its trustee were parties to the Fee Agreement's arbitration provision. Wilmington Trust also asserts that the terms of the Trust Agreement limit creditors' access to Trust assets. According to Wilmington Trust, agreeing to arbitrate would have permitted Sanders & Parks to recover directly from Trust assets. From this, Wilmington Trust concludes it declined to arbitrate for the protection of the Trust.

Taking the Complaint as true and making all reasonable inferences in Wells's favor, Wells has pled that the arbitration threatened Trust assets. The Trust Agreement specifically contemplates that "expenses of [Wells]" attributable to "legal fees based upon the fee agreements [Wells] has with . . . Sanders & Parks" may be paid by the Trust.[88] Wilmington Trust had the power "to use income and principal of the trust" to pay those fees.[89] If an arbitrator awarded fees to Sanders & Parks under the "fee agreements" referenced in the Trust Agreement, it is reasonably

---

[87] Trust Agr. § B, art. IV(19).

[88] *Id.* § A, art. III(F).

[89] *Id.*

25

conceivable that Wilmington Trust would have the power to pay them. Accordingly, it is reasonably conceivable that Wilmington Trust had the power to defend those "proceedings for the protection of trust assets," and owed Wells a duty to do just that.[90]

### c. Wilmington Trust Had A Duty To Provide Wells With Trust Information.

Finally, Wilmington Trust had a duty to provide Wells access to relevant information in its possession. Trustees have a duty to inform the trustee of, among other things, "significant developments concerning the trust and its administration, particularly material information needed by beneficiaries for the protection of their interests."[91] A trustee "also ordinarily has a duty promptly to respond to the request of any beneficiary for information concerning the trust and its administration, and to permit beneficiaries on a reasonable basis to inspect trust documents, records, and property holdings."[92] That is because "[t]he books and records of the trustee's

---

[90] Even if Wilmington Trust could establish that it was reasonable to decline to arbitrate because of a risk to Trust assets, this argument is waived because it was raised for the first time in Wilmington Trust's reply brief. *See Haney v. Blackhawk Network Hldgs., Inc.*, 2016 WL 769595, at *7 n.58 (Del. Ch. Feb. 26, 2016).

[91] Restatement (Third) of Trusts § 82(1)(c) (2007). This duty exists separately from the duty of care. *McNeil*, 798 A.2d at 509 ("The duties to furnish information and to act impartially are not subspecies of the duty of care, but separate duties."). Delaware follows the Restatement (Third) of Trusts. *See Frederick-Conaway v. Baird*, 159 A.3d 285, 299 n.52 (Del. 2017) ("This Court has looked to the Restatement (Third) of Trusts for guidance on other areas of trust law.").

[92] Restatement (Third) of Trusts § 82(2) (2007).

administration of the trust do not belong to the trustee, but are part of the trust estate."[93] Such records include communications containing legal advice where that information "is reasonably necessary to the prevention or redress of a breach of trust or otherwise to the enforcement of the beneficiary's rights under the trust."[94]

The Complaint pleads facts supporting the inference that at least some of the information and documents Wilmington Trust failed to provide concerned the Trust and its administration. By the time Wells learned about the fee dispute in 2019, Wilmington Trust had been engaging with Sanders & Parks for more than eight years. During those eight years and in its capacity as trustee, Wilmington Trust accumulated information regarding the value of ARW and the fee dispute. And in 2006, Wilmington Trust appears to have developed a valuation of ARW, an exercise that presumably yielded or relied on other documentation. Any documents or other information relating to the fee dispute that Wilmington Trust held was obtained in its role as trustee. It is reasonably conceivable that Wilmington Trust had the duty to provide this information to Wells.

---

[93] *Bogert's* § 961; *see id.* ("[B]ecause the trustee is accountable to the beneficiaries for the trustee's proper management of the trust property, the trustee should maintain accurate and complete records that enable it to prove that it has so managed the trust estate.").

[94] *See J.P. Morgan Tr. Co. of Del. v. Fisher*, 2019 WL 6605863, at *6 (Del. Ch. Dec. 5, 2019) (quoting Restatement (Third) of Trusts § 82 cmt. f (2007)).

## 2. Wells's Breach of Trust Claims

Having found that all Wells's breach of fiduciary duty claims survive, I now address Wells's claim that Wilmington Trust committed two breaches of trust: failing to accept the Settlement Offer, and not informing him about the Settlement Offer. Because the breach of trust claim for failure to accept the Settlement Offer is legally identical to the breach of fiduciary duty claim for failing to accept the Settlement Offer,[95] and because Wilmington Trust offers no additional defense to the breach of trust claim, the motion to dismiss is denied as to that claim.

I likewise find that Wells has adequately pled Wilmington Trust owed a duty to inform him of the Settlement Offer. Delaware follows the Restatement (Third) of Trusts.[96] That Restatement provides that trustees have a duty to inform beneficiaries of, among other things, "significant developments concerning the trust and its administration, particularly material information needed by beneficiaries for the protection of their interests."[97] This duty exists regardless of whether the beneficiary

---

[95] *See* 12 *Del. C.* § 3581(a) ("A violation by a trustee of a duty the trustee owes to a beneficiary is a breach of trust.").

[96] *See Frederick-Conaway*, 159 A.3d at 299 n.52 ("This Court has looked to the Restatement (Third) of Trusts for guidance on other areas of trust law.").

[97] Restatement (Third) of Trusts § 82(1)(c) (2007).

28

has asked for such information.[98]  The Trust Agreement contains no limitation on the duty to inform.

Wilmington Trust argues that it was not obligated to inform Wells of the Settlement Offer because the Settlement Offer did not relate to the Trust and was instead personal to Wells.  I disagree.  As explained, the Complaint pleads that at the time the Settlement Offer was made, Sanders & Parks sought to recover from funds held by the Trust.  The motion to dismiss is denied as to this claim.

### 3.    Wells's Claims Are Not Time Barred.

Wilmington Trust argues that "most" of Wells's claims are barred by laches, and that the application of the analogous three-year statute of limitations provided by 10 *Del. C.* § 8106 mandates dismissal.  Wells responds that Wilmington Trust's failure to disclose the pending dispute and the existence of the Settlement Offer should toll the statute of limitations under the discovery rule.

Wells filed the Complaint on November 29, 2021.[99]  The Complaint alleges that Wilmington Trust committed breaches of fiduciary duty and breaches of trust by (1) failing to accept the Settlement Offer in 2016, (2) failing to inform him of that 2016 Settlement Offer, (3) declining to arbitrate against Sanders & Parks after

---

[98] *See* Restatement (Third) of Trusts § 82 (2007); *Bogert's* § 962 (explaining that the Third Restatement imposes a duty to furnish information absent a request).

[99] D.I. 1.

Sanders & Parks sent its arbitration demand to Wells on February 25, 2019, and (4) failing to assist Wells during that arbitration. Wells seeks monetary damages.[100]

Where a plaintiff brings an equitable claim seeking legal relief, the Court will forego a traditional laches analysis in favor of applying an analogous statute of limitations.[101] That statute of limitations, here three years under 10 *Del. C.* § 8106, begins running when a cause of action accrues.[102] Generally, a cause of action will accrue at the time of the wrongful act, regardless of whether the plaintiff knew of that act.[103] Wells's breach of fiduciary duty claim centering on the 2016 Settlement Offer and breach of trust claims for failing to accept the Settlement Offer and failing to inform him of the Settlement Offer are barred by laches unless tolled.

The Court will find that a statute of limitations has been tolled "in certain limited circumstances."[104] Relevant here, "[u]nder the 'discovery rule' the statute is tolled where the injury is 'inherently unknowable and the claimant is blamelessly ignorant of the wrongful act and the injury complained of.'"[105] There, "the statute

---

[100] D.I. 1 at 19.

[101] *See Kraft v. WisdomTree Invs., Inc.*, 145 A.3d 969, 981 & n.42 (Del. Ch. 2016) ("[I]t is now clear that statutes of limitations apply to equitable claims seeking legal relief . . . .").

[102] *See* 10 *Del. C.* § 8106.

[103] *Wal-Mart Stores*, 860 A.2d at 319.

[104] *Id.*

[105] *Id.* (quoting *Coleman v. PricewaterhouseCoopers, LLC*, 854 A.2d 838, 842 (Del. 2004)).

will begin to run only 'upon the discovery of facts "constituting the basis of the cause of action *or* the existence of facts sufficient to put a person of ordinary intelligence and prudence on inquiry which, if pursued, would lead to the discovery" of such facts.'"[106] Wells bears "the burden of pleading facts leading to a reasonable inference" that the statute of limitations should be tolled.[107]

Wells must first plead his injuries were inherently unknowable. Our Supreme Court precedent demonstrates that in the context of the relationship between a professional and a client, where the client as a layperson is unable "to detect the professional's negligence," wrongdoing is inherently unknowable if the plaintiff did not have inquiry notice of that wrongdoing.[108] In *Isaacson v. Artisan's Savings Bank*,[109] our Supreme Court applied the discovery rule where an accountant changed the plaintiff's accounting practices, but failed to obtain governmental consent for the change as required by statute.[110] Reasoning "the relationship was one of confidence and reliance by plaintiff on the expertise" of the accounting firm, the Supreme Court found the statute of limitations was tolled until the IRS notified the plaintiff of the

---

[106] *Id.* (quoting *Coleman*, 854 A.2d at 842).

[107] *Winner Acceptance Corp. v. Return on Cap. Corp.*, 2008 WL 5352063, at *14 (Del. Ch. Dec. 23, 2008); *In re Cote d'Azur Est. Corp.*, 2022 WL 4392938, at *51 (Del. Ch. Sept. 19, 2022).

[108] *See Coleman*, 854 A.2d at 842.

[109] 330 A.2d 130 (Del. 1974).

[110] *Id.* at 131.

deficiency.[111] In *Pioneer National Title Insurance v. Child, Inc.*,[112] our Supreme Court held the discovery rule tolled the statute of limitations where the plaintiff's attorney negligently performed a title search, inducing the plaintiff to purchase a property that did not have "a clear and marketable title."[113] The Court found that the statute of limitations began to run when the buyer attempted to sell the property.[114] In *Wal-Mart Stores v. AIG Life Insurance*,[115] the Supreme Court applied the rule to claims arising out of an IRS ruling that retrospectively denied tax benefits from the purpose of corporate owned life insurance policies where broker- and insurer-defendants "failed to disclose material facts and risks of the [insurance] plan" at the time of purchase.[116] In *Coleman v. PricewaterhouseCoopers*,[117] the Supreme Court applied the discovery rule to a claim that an accounting firm negligently performed due diligence on an acquisition target.[118] The Supreme Court relied in part on "[t]he professional nature of the relationship," "the plaintiffs' inability to acquire by other means[] information about the accounting treatment," and "the need for persons in

---

[111] *Id.* at 133.

[112] 401 A.2d 68 (Del. 1979).

[113] *Id.* at 71–72.

[114] *See id.*

[115] 860 A.2d 312 (Del. 2004).

[116] *Id.* at 317, 319–21.

[117] 854 A.2d 838 (Del. 2004).

[118] *Id.* at 842–43.

the plaintiffs' position to rely upon the accounting work performed."[119]  These cases

teach that, at least in the context of a professional relationship, an injury is inherently

unknowable when the plaintiff had no reason to believe she should investigate the

professional's conduct.  In this context, "inherently unknowable" effectively means

the plaintiff lacks inquiry notice.  A plaintiff may establish a lack of inquiry notice

"by showing justifiable reliance on a professional or expert whom they have no

ostensible reason to suspect of deception."[120]

Wells has met his burden under this standard.  Wells and Wilmington Trust—

a professional trustee—have the type of professional-client relationship

contemplated by our Supreme Court's jurisprudence.  Wells pled he was not on

inquiry notice of Wilmington Trust's wrongdoing, in part because of his reliance on

Wilmington Trust.  When Wells was a minor, beginning in 2002, his guardian Grist

discussed the fee issue with Sanders & Parks.  Those conversations stopped entirely

by 2010.  From 2010 to 2019, Sanders & Parks communicated exclusively with

Wilmington Trust.  Neither Sanders & Parks nor Wilmington Trust informed Wells

that Sanders & Parks was communicating directly with Wilmington Trust, and

nothing in the pleadings suggests Grist was aware of those conversations.  Wells was

relying on his professional fiduciaries, and would have no idea, and no reason to

---

[119] *Id.* at 842.

[120] *In re Dean Witter P'ship Litig.*, 1998 WL 442456, at *5 (Del. Ch. July 17, 1998).

suspect, that Sanders & Parks sent Wilmington Trust a settlement offer six years after Grist stopped negotiating and a full sixteen years after the estate proceedings concluded. Wells had no reason to doubt the professional conduct of Wilmington Trust as his trustee.[121] Moreover, nothing in the Complaint suggests that Wells should have investigated any wrongdoing until he received the arbitration demand from Sanders & Parks. For purposes of the motion to dismiss, I conclude the applicable statute of limitations is tolled at least until Sanders & Parks sued Wells in February 2019. Wells filed the Complaint in November 2021, well within the applicable three-year statute of limitations.

Wilmington Trust argues that Wells "was on inquiry notice of Sanders & Parks' longstanding demands for additional fees" because Grist, his guardian ad litem, was aware of the fee dispute, and that knowledge should be imputed to Wells as Grist's ward.[122] This argument is inconsistent with our law permitting even persons of legal age to blamelessly rely on professional fiduciaries.[123] And the relevant wrongdoing is Wilmington Trust's failure to accept and disclose the Settlement Offer Sanders & Parks made to Wilmington Trust. Even if Grist's knowledge were imputed to Wells, he would have no reason to suspect that

---

[121] *Id.*

[122] D.I. 19 at 19.

[123] *Dean Witter*, 1998 WL 442456, at *5; *Isaacson,* 330 A.2d at 133.

Wilmington Trust received a settlement offer six years after it stopped communicating with Grist. For purposes of this motion, I conclude Wells has pled he had no notice of the Settlement Offer until 2019. Wells has met his burden under the discovery rule, and his claims are timely.

## III. CONCLUSION

For the forgoing reasons, Wells's motion to amend is **DENIED WITHOUT PREJUDICE**. Wilmington Trust's motion to dismiss is **DENIED**. The parties shall confer and file a stipulated scheduling order.